## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| J.A., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 08-CV-0580 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs respectfully request that this Court enter summary judgment in their favor.  The grounds for this motion appear in the accompanying memorandum of points and authorities.

WHEREFORE, plaintiffs respectfully request that this motion be granted.

Respectfully submitted,

_____
/s/ (filed electronically)
Michael J. Eig          #912733
Matthew B. Bogin        #911552
Paula A. Rosenstock     #494580
Patricia F. Cyr         #490755

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J.A., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 08-CV-0580 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION.

      J.A. is a four-year-old disabled child who is entitled to much more than he has received

from his school system.  Identified as a child in need of special education and related services

under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§

1400. *et seq*., J.A. and his parents, Carl Andersen and Alyson Steele ("the parents"), asked from

the District of Columbia Public Schools ("DCPS") for appropriate services, but were denied

them.  Then they sought a Due Process Hearing as provided under the IDEA, but what they

received was nothing like what the statute guarantees them.  Finally, they bring this action in

response to the defendants' failure to provide him with the free appropriate public education

("FAPE") and due process of law to which J.A. is entitled under the IDEA.

      The parents, through an administrative appeal, sought reimbursement from DCPS for

J.A.'s private placement for the 2007-2008 school year at the Jenny Waelder Hall for Children

("Jenny Waelder Hall"), as well as related services.  This action appeals the decision of an

Impartial Hearing Officer,[1] who failed to complete a reasoned and substantive analysis of the evidence before him, failed to resolve legal issues before him through statutorily-mandated conclusions of law, incorrectly determined that DCPS had offered J.A. an appropriate Individualized Education Program ("IEP") and placement, and therefore denied the family its requested relief.

In so holding, the Hearing Officer committed a myriad of fundamental violations of the IDEA including (1) failing to list the witnesses or discuss their testimony, (2) failing to separately and completely list findings of fact and conclusions of law, and (3) failing to provide substantive analysis to explain how he reached his decision. On the factual record before him – and now before this Court – the Hearing Officer plainly should have held for J.A., as we now ask the Court to do.

## II.   FACTUAL BACKGROUND.

J.A. was born on July 29, 2003. Administrative Record at 4;[2] Tr. at 3.[3] DCPS found him eligible for special education and related services under the IDEA, as a student with a developmental delay. J.A.'s developmental delays are primarily in the areas of expressive and pragmatic language, sensory processing, and motor skills. J.A. also has limited social and

---

[1]    Impartial Hearing Officer Will Purcell, Esq. decided the administrative case in *J.A. v. District of Columbia Public Schools* (January 3, 2008). Citations to this Decision will hereafter be to the Administrative Record which contains the decision at pages 3-8..

[2]    Citations to the Administrative Record, which was submitted to the Court on July 11, 2008, will appear as Admin. Rec. at __.

[3]    Citations to the transcript of the Administrative Due Process Hearing, conducted on December 20, 2007, are part of the administrative record and appear as "Tr. at __."

adaptive skills.  As a result of these disabilities, he requires a small, full-time special education program with integrated related services.  Admin. Rec. at 156.

### A.     The 2006-2007 School Year.

As a result of a screening at J.A.'s daycare facility in August, 2006, his parents brought him to Children's National Medical Center ("Children's") for a developmental evaluation. Admin. Rec. at 25-28.  He also underwent a Speech/Language Evaluation at the George Washington University Medical Center.  Admin. Rec. at 29-31.  The results of the evaluations revealed that J.A. had developmental delays.

At the recommendation of Children's, the parents contacted the DCPS Central Assessment Referral and Evaluation ("C.A.R.E.") Center to begin the process of determining J.A.'s special education eligibility.  DCPS conducted several of its own assessments and observations in November and December of 2006.  Admin. Rec. at 32-50.  After reviewing both the parents' evaluations and its own, DCPS held an IEP meeting and concluded that J.A. was eligible to receive special education services as a student with a developmental delay.  DCPS developed an IEP which called for 24.5 hours per week of specialized instruction in an inclusion setting at West Elementary School, with one-and-a-half hours per week each of Speech/Language and Occupational Therapy.  Admin. Rec. at 4; 51.  The IEP specified that J.A.'s progress was to be tracked on a monthly basis and identified ten separate goals, and multiple corresponding short-term objectives, each of which required, at a minimum, documented observations.  Admin. Rec. at 53-62.

While at West, J.A.  failed to make significant progress.  Specifically, his behaviors worsened, he regressed academically, and he experienced sensory overload due to the large and

noisy classroom setting.  Admin. Rec. at 89-99, 127.  Growing increasingly concerned about their

son's difficulties at West, the parents contacted Stephanie Owens, an educational specialist, and

asked her to observe J.A. and make recommendations about his special education needs.  Ms.

Owens conducted two observations of J.A. at West in May, 2007.  Admin. Rec. at 89-99.  She

concluded that he required full-time special education with a low student-to-teacher ratio and

integrated services throughout the day.  Ms. Owens also made significant recommendations for

the related services J.A. should receive, including Speech/Language therapy, Occupational

Therapy, and social/emotional counseling.  Admin. Rec. at 93.  J.A. completed the school year at

West in June, 2007.[4]

## B.     The June 12, 2007, IEP Meeting.

Over the summer, the IEP team convened at the C.A.R.E. Center to review J.A.'s

progress from the school year, revise his IEP, and determine an appropriate placement for the

2007-08 school year.  Admin. Rec. at 113.  On June 12, 2007, a meeting was held with the

parents, Stephanie Owens, C.A.R.E. Center supervisor Zondra Johnson,  and C.A.R.E. Center

program specialist JoAnn Lowery.  Recognizing that the individuals present at the meeting did

not constitute a proper IEP team, Ms. Owens requested that the meeting be rescheduled so that

J.A.'s teachers and related service providers could be present to discuss his progress.

Furthermore, DCPS had failed to provide any documentation of J.A.'s progress (or lack thereof)

for the team's consideration, as required by his IEP.  Ms. Owens requested that DCPS provide

the parents with progress reports from J.A.'s teachers prior to the next meeting.  Ms. Johnson

---

[4]     On April 18, 2007, the IEP team held a meeting to review J.A.'s IEP and progress.
Admin. Rec. at 80-88.  The team did not make any changes to the IEP and the IEP notes only
reflect a general discussion of services at West.

acknowledged that the teachers were in error for failing to document J.A.'s progress as required

by his IEP and that his placement could not be determined until the progress reports were

received and his IEP was revised.  Admin. Rec. at 113.

### C.    The August 15, 2007, IEP Meeting.

On August 15, 2007, the IEP team reconvened.  However, despite the parents' previous

requests, DCPS still failed to provide the parents and Ms. Owens with sufficient information

regarding J.A.'s progress prior to the meeting.  DCPS did provide the parents with a progress

report that was vague and failed to identify any measurable data regarding J.A.'s progress.  In

addition, once again, and despite the request of the parents at the prior meeting, DCPS failed to

have a complete IEP team present.  Specifically, DCPS failed to include J.A.'s teacher (or any

representative from West), a general educator, an Occupational Therapist, and a school

psychologist or social worker.

This meeting was a continuation of the June IEP meeting; its purpose was to review

J.A.'s progress and revise his IEP.  Admin. Rec. at 127-28.  However, despite the limited data

that J.A. had failed to meet *nearly all of his IEP goals*, the team somehow determined that his

IEP was appropriate, and failed to make a single change to the document.  *Id*.  Then, despite the

lack of progress reports, updated IEP, or a complete IEP team, and without any input from the

parents, the DCPS team members issued a change of placement for J.A. from West to Anne

Beers Elementary School.  The team issued a Prior Notice for Anne Beers – a noncategorical,

self-contained preschool program which DCPS had just created for the upcoming school year.

Admin. Rec. at 126; Tr. at 167, 180.  The change of placement was not discussed at the meeting

and little to no information about Anne Beers was offered for the parents' consideration.

J.A.'s father objected to the IEP team issuing a placement decision without appropriate data to create an IEP, a position the MDT itself shared at the June meeting. Mr. Andersen formally gave the team notice that he intended to remove J.A. from public school and to enroll him at a private school at public expense. Complaint ¶ 20; Admin. Rec. at 127. J.A. attended Jenny Waelder Hall for the 2007-08 school year, where he made significant educational progress. Admin. Rec. 156-60.

**D.    The December 20, 2007, Due Process Hearing.**

The parents filed a due process hearing request on November 1, 2007, appealing the decision of the IEP team. Admin. Rec. at 4; Complaint ¶ 25. As a remedy for the school system's failure to propose an appropriate program or placement for J.A., the parents sought a half-day placement at Jenny Waelder Hall, Speech/Language and Occupational Therapy, psychological services, and transportation. Admin. Rec. at 21-24. DCPS convened a mandatory Dispute Resolution Session on November 13, 2007, which was unsuccessful. Complaint ¶ 27. The hearing took place before Hearing Officer Will Purcell on December 20, 2007, and the decision was issued on January 3, 2008. Admin. Rec. at 3, 6; Complaint ¶ 28, 32.

At the hearing, both parties presented evidence as to whether DCPS denied J.A. a free appropriate public education. Complaint ¶ 28. The parents presented testimony from Stephanie Owens, who was admitted as an expert in special education. She was present at both IEP meetings and conducted observations of J.A. at West and Jenny Waelder Hall. Ms. Owens also observed the proposed placement at Anne Beers. The parents also offered testimony from Dr. Griffin Doyle, a psychologist who worked with J.A. twice a week at Jenny Waelder Hall, who discussed J.A.'s unique educational needs. Both of J.A.'s parents testified regarding the IEP

process, the proposed placement at Anne Beers, and the failures of DCPS to provide J.A. with an appropriate IEP and placement.

DCPS presented testimony from Zondra Johnson, a supervisor at the C.A.R.E. Center, and Rhoda Matthews, a special education coordinator at Anne Beers. Ms. Johnson was only familiar with J.A. from participating in his IEP meetings and conducting an observation of him while he attended West. Ms. Matthews had no direct or personal knowledge of J.A. Tr. at 152-153, 120.

In his Decision, the Hearing Officer somehow concluded that the parents failed to meet their burden to establish that J.A.'s IEP and placement at Anne Beers were inappropriate. Complaint ¶ 32. However, the Hearing Officer failed to articulate any substantive reasons for his conclusions, and offered no analysis or discussion about the witnesses or the evidence presented at the hearing. Instead, in a two-and-a-half page decision, he briefly and selectively summarized some of the facts, and provided four vague findings of fact and conclusions of law. In his finding regarding the appropriateness of the DCPS proposal, he afforded complete deference to the DCPS officials, while failing to cite to any specific testimony or evidence. Admin. Rec. at 3-7. The parents appeal from this utterly vacant and misguided decision, and seek relief before this Court.

III. **STANDARD OF REVIEW.**

A. **Summary Judgment in Favor of the Plaintiffs Is Appropriate.**

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the context of the

IDEA, a federal court must give "due weight to the findings of the local and state educational agencies even though it must also make an independent decision based upon a preponderance of the evidence." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 205-06 (1982).  The primary source of evidence in an IDEA case comes from the administrative hearing, and the administrative proceedings must not be considered a dry run for protracted litigation in federal court.  *Springer v. Fairfax Co. Sch. Bd.*, 134 F. 3d 659, 667 (4th Cir. 1997); *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. School Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985).

A defense to this motion for summary judgment would arise where a consideration of all of the evidence in the record reveals material issues of fact.  In such a review, it is important to note that the administrative decision does not represent the absolute boundaries of the Court's review; rather, the decision represents but a single source for review.[5]  "Despite being termed summary judgment, the district court's decision is based on the preponderance of the evidence." *Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997); *see also*, 20 U.S.C. § 1415(e)(2); *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994), *cert. denied*, 513 U.S. 839

---

[5]    The correct judicial inquiry in IDEA cases, unlike in actions based on other administrative decisions, requires deferential, but independent, examination of the entire record, and then a decision rendered based on the preponderance of the evidence.  The IDEA instructs that a district court, upon hearing an action brought for review of administrative proceedings, "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(e)(2).  *See, e.g., Burlington*, 736 F.2d at 791 ("Congress intended courts to make bounded, independent decisions -- bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court."); *Hunger*, 15 F.3d at 669 (holding that "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").

(1994).  A proper summary judgment inquiry in the present case thus requires the Court to

conduct a review of the entire administrative record.

    **B.**    **Standard of Review for Hearing Officer's Decisions.**

Although a Hearing Officer's findings of fact are usually considered *prima facie* correct,

the Court is required to make an independent decision based upon the preponderance of the

evidence, giving due weight to the *regularly made* findings of fact at the administrative level.

*Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991) (emphasis added).

Applying the "due weight" in the context of IDEA administrative decisions, "findings of fact

made in the state administrative proceedings must 'be considered *prima facie* correct, akin to the

traditional sense of permitting a result to be based on such fact-finding, but not requiring it.'"

*J.P. v. County Sch. Bd. of Hanover County*, 516 F.3d 254, 259 (4th Cir. 2008), citing *Doyle,* 953

F.2d at 105.  *See also, County Sch. Bd. v. Z.P.*, 399 F.3d 298, 305 (4th Cir. 2005) ("[F]actual

findings made during the state administrative proceeding are entitled to a presumption of

correctness, so long as the findings were 'regularly made.'").  As is critical here, it is also clear

that, where these findings are not regularly made, or the application of the law to the facts is

erroneous, the decision does not merit deference.  *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d

127, 131 (5th Cir. 1993).  This rule of law was also adopted in *Sarah M. v. Weast*, 111 F. Supp.2d

695, 698 (D. Md. 2000).

The determination of whether a Hearing Officer's findings were "regularly made"

requires that the "reviewing court . . . examine the way in which the state administrative

authorities have arrived at their administrative decision and the methods employed."  *Doyle*, 953

F.2d at 105.  *See also, Z.P.,* 399 F.3d at 305 ("Factual findings are not regularly made if they are

reached through a process that is far from the accepted norm of a fact-finding process."). The

IDEA requires that a Hearing Officer's decision "be made on substantive grounds based on a

determination of whether the child received a free appropriate public education." 20 U.S.C. §

1415(f)(3)(E)(I). Further, DCPS' Standard Operating Procedures for due process hearings under

the Special Education Student Hearing Office require that:

> The final decision . . . must include the identity of the parties, the final
> determination, and appeal rights. The Hearing Officer's Determination must
> also include findings of fact and conclusions of law; identify who prevailed on
> what issue; and specify what the school system, the parent(s), and the child are
> expected to do to carry out the decision...*a final decision must...include findings
> of fact and conclusions of law separately stated.*

District of Columbia Public Schools, State Enforcement & Investigation Division, *The Special

Education Student Hearing Office Due Process Hearing Standard Operating Procedures* (2006)

(emphasis added) (a copy is attached as Exhibit 1).

Of course, in its review of the administrative record, a district court is not required to

accord controlling deference to the decision of the Hearing Officer. It would be improper to

accept as unassailable either the factual findings in the administrative decision, or the decision

itself. Rather, before determining whether factual disputes exist, a proper analysis must consider

all of the evidence. Only then can the Court make a determination of whether the Hearing

Officer erred in his decision, or departed from the normal decision-making process. Should this

Court determine that the Hearing Officer did make findings of fact or a decision in error, the

Court should not accord the resulting decision any deference.

IV.    THE HEARING OFFICER'S DECISION IS NOT ENTITLED TO ANY DEFERENCE.

A.    The Hearing Officer's Findings of Fact/Conclusions of Law, or Lack Thereof, are Not Regularly Made.

The Hearing Officer's decision here represents a true perversion of due process.  The Hearing Officer had before him a full day of testimony and evidence from both parties on the relevant issues.  Yet, in his decision, he makes only four combined "Findings of Fact and Conclusions of Law," providing this Court with almost no information to review.  The lack of findings of fact and conclusions of law are clearly not "regularly made."  Furthermore, the entire decision is less than three pages, does not separately list findings of fact and conclusions of law, and does not weigh or discuss the evidence and witness testimony provided during the hearing all as required by the law.  The four brief findings of fact and conclusions of law found in the Decision shed no light on how the Hearing Officer arrived at his decision and the methods employed in that process.  In addition, the Hearing Officer failed to separately state findings of fact and conclusions of law as required by DCPS Standard Operating Procedures.  Admin. Rec. at 5.

The United States Court of Appeals for the District of Columbia has stressed that, ". . . a hearing decision 'without reasoned and specific findings deserves little deference.'" *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) citing *Kerkam v. Superintendent, D.C. Pub. Schs.,* 931 F.2d 84, 87 (D.C.Cir. 1991).  In *Reid*, the Hearing Officer actually had made express findings of fact regarding the school system's denial of FAPE, but the Court found his one sentence award regarding compensatory services lacked reasoning or factual findings to show that it would meet the student's needs.  The Court explained, "In crafting a remedy for a

denial of FAPE, the Hearing Officer *must engage in a fact-intensive analysis* that includes individualized assessments of the student so that the ultimate award is tailored to the student's needs." *Id*. (Emphasis added).  Clearly, the violation here is much more broadly based; J.A.'s decision below evidences no <u>fact-intensive</u> <u>analysis</u> throughout its brief text.

Indeed, the Court in *Brahham v. District of Columbia*, 427 F.3d 7, 11 (D.C. Cir. 2005) dealt with both an award of compensatory services and a question of placement/FAPE.  After applying the "*Reid* standard" to the award of compensatory services, the Court discussed the issue of placement.  "Although the two forms of relief have different purposes, placement awards, like compensatory awards . . . must be tailored to meet the child's specific needs."  The Court again emphasized, "As such, *determining what constitutes FAPE will always require a fact-intensive and child-specific inquiry*." *Id*. (emphasis added).

In *Brahham*, the Court discussed a laundry list of considerations which are relevant in determining whether a particular placement is appropriate for a particular student under the IDEA.  These considerations include, " . . . the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the private school, the placement's cost, and the extent to which the placement represents the least restrictive environment." *Id*.   Here, although the record was complete with all the above information virtually supporting J.A.'s position, it is impossible to imagine that the Hearing Officer considered *any* of these things in reaching his flawed decision.

The *Brahham* Court ultimately held that the record contained none of the required information necessarily for the Court to make an informed decision: "The record provides no insight about the precise types of education services Terrance needs to progress." *Branham*, 427

F.3d at 12.  As a result, the case was remanded to the District Court with the option to remand to

the Hearing Officer, or take supplemental evidence and reach a determination itself.  The Court

urged the District Court to undertake the evidentiary hearing itself in order to minimize further

delay and denial of FAPE to the student.  Here and quite unlike the situation in *Branham*, the

administrative record is complete and full of information regarding J.A's specific needs, the link

between his needs and his required services, and the services necessary for him to make progress.

The Hearing Officer simply failed to consider the record.  Accordingly, unlike the situation in

*Branham*, this Court need not take supplementary evidence, nor should it remand to the Hearing

Officer.  In order to consider whether DCPS denied J.A. a FAPE, this Court may exercise the

power it is granted under the IDEA to decide the case:  "After giving the administrative

fact-findings such due weight, if any, the district court then is free to decide the case on the

preponderance of the evidence, as required by the statute."  See *Doyle* 953 F.2d at 104.  Such a

judicial determination is necessary in order to avoid further delay and denial of Due Process to

this student and his family.

This is precisely what occurred in *Petway, J.P. v. District of Columbia*, 2005 WL

3276349 (D.D.C. 2005) where the Hearing Officer's Decision contained no discussions or

conclusions of law regarding the specified issues in the case.  The Court noted that, "Despite [the

Hearing Officer's] failure to analyze several of the issues in this case, the Hearing Officer

concluded that J.P. was not entitled to reimbursement for the cost of enrolling at a private

school."  *Id*. at 6.  Relying on *Reid*, the District Court declined to give deference to the Hearing

Officer's Decision, and stressed that the administrative record overwhelmingly supported the

conclusion that the proposed program and placement were inappropriate; DCPS had failed to

present evidence and testimony to the contrary.  *Id*. at 8.  Based on this, the Court granted

reimbursement for the parents' unilateral private school placement.  *Id.* at 12.  There is no

meaningful distinction with *Petway* here.[6]  The same relief should be awarded.  See also, *Argueta*

*v. District of Columbia*, 355 F.Supp.2d 408 (D.D.C. 2005) citing *School Comm. of Burlington v.*

*Mass. Dept of Educ.*, 471 U.S. 359, 369 (1985) ("the Court has broad discretion to grant

appropriate relief under the IDEA. . . .")

The D.C. Circuit is not along in its analysis of this critical IDEA mandate regarding

deference to Hearing Officers.  In a recent ruling by the Fourth Circuit, the Court explained the

process by which the Court should consider whether the Hearing Officer's findings of fact were

regularly made.  *Z.P.,* 399 F.3d at 307.  Though the Hearing Officer need not "explain in detail

its reasons for accepting the testimony of one witness over that of another," the Officer must at

least explain the basis for his rulings and make clear why he was not persuaded by the evidence.

*Z.P.*, 399 F.3d at 307.  The Hearing Officer must be thorough, and his decision should include

citations and references to the testimony and evidence on which he relies.  *Id* at 305.  None of

that happened here.

Because the process by which the Hearing Officer made his findings is virtually absent

from his Decision, the Court cannot determine whether they were regularly made, and thus

cannot afford the Decision deference**.**

---

[6]     "Confronted with the undisputed testimony that K.P.'s teachers at Backus considered her
placement at that school to be inappropriate and coupled with the fact that the Defendant offered
no evidence at the Hearing to support the appropriateness of K.P.'s placement at Backus, this
Court finds that Backus was not an appropriate placement for K.P." *Id*. at 8.

-14-

**B.    The Decision is Not Entitled to Deference on Issues of Witness Credibility.**

In general, a reviewing court should defer to a Hearing Officer's determinations of credibility. *Z.P.*, 399 F.3d at 307. "Credibility determinations implicit in a Hearing Officer's decision are as entitled to deference under *Doyle* as explicit findings." *Id.* However, where such findings stray "from the accepted norm of the fact-finding process," no such deference is required. *Doyle*, 953 F.2d at 104-105.

Here, the Hearing Officer, in four brief quasi-findings of fact/conclusions of law, decided that "DCPS took action to revise the IEP[7] and determine an appropriate placement," and that the placement at Anne Beers was appropriate to meet the student's needs, "according to the testimony of DCPS Special Education Coordinator at Anne Beers and Ms. Zondra Johnson." Hearing Officer's Decision at 3. He further found that he was, "not satisfied that the Petitioners met the burden of proof . . . to establish that the student's IEP is inappropriate or that Anne Beers is an inappropriate placement." *Id.* By no stretch of imagination can these cursory statements be considered to offer any substantive analysis or evidence of the Hearing Officer's decision process. Apparently, the Hearing Officer accords the DCPS witnesses with an extraordinary amount of deference, blindly accepting whatever they may have said, while flatly (albeit implicitly) dismissing all contradictory testimony presented by the parents. One could not even determine that the parents presented a substantive case based on the little the Hearing Officer wrote. Nowhere is there any reasoned analysis as to why he found DCPS' evidence and testimony to be more persuasive.

---

[7]    This finding alone is incredible considering the clear testimony from DCPS itself, that DCPS did not revise the IEP. Tr. at 160. Furthermore, the notes from the IEP meeting also state that the team felt the IEP was appropriate and would not revise it. Admin. Rec. at 127.

The Hearing Officer's findings are even more outrageous when viewed in light of the overwhelmingly strong evidence and expert testimony in favor of the parents, none of which was even mentioned in the Decision.  Ms. Owens, an expert in special education, testified specifically about the Anne Beers program and why it is not an appropriate placement for J.A.  Specifically, she testified that the students in the classroom were all at lower cognitive and behavioral levels than J.A., which is problematic because it, "wouldn't provide appropriate models or be at the same cognitive and behavioral level as J.A." Tr. at 43.  She further testified that the proposed program did not have transitional cues or integrated therapy services in the classroom – essential components of J.A.'s education.  Tr. at 42.  Moreover, the classroom itself was not organized and had a high noise level which would be too distracting.  Tr. at 43.  Ms. Owens testified that J.A. requires a small student-to-teacher ratio, in a highly structured, quiet classroom.  Tr. at 44.  Finally, Ms. Owens testified at length regarding the multiple procedural violations throughout the IEP process.  Complaint ¶ 29; Tr. at 28-38.  Despite this testimony, the Hearing Officer barely mentions Ms. Owens in his Decision and provides no explanation as to why he was dismissing her testimony.  This alone is a violation of the IDEA and the family's due process rights.

The parents also presented testimony from Dr. Doyle, a psychologist and expert in psychoanalytic psychotherapy who worked with J.A. twice a week at Jenny Waelder Hall.  Dr. Doyle spoke extensively about J.A.'s psychological makeup, and of the progress he was making through their twice-weekly sessions.  Dr. Doyle also testified about the need to include psychological services in J.A.'s IEP because ". . . it's critical that he needs to have a really multidimensional approach to him. . . ." Tr. at 91.  Despite his testimony, the Hearing Officer

fails to even acknowledge that Dr. Doyle testified. His name is not present anywhere in the decision, expect on the "Index of Names." This is truly remarkable in the worst way.

The parents, Carl Andersen and Alyson Steele, both testified at length regarding their son. Mr. Andersen spoke of the violations that occurred at the June 12, 2007, and August 15, 2007, IEP meetings. Ms. Steele observed the Anne Beer's program with Ms. Owens and was able to give a detailed description of the classroom that was proposed for her son. Tr. at 216. She was particularly concerned by the noise level of the room, describing it as "really loud chaos." Tr. at 213. She believed that "he (J.A.) will go nuts" in the classroom at Anne Beers (Tr. at 215) and that loud noise can disturb J.A. to the point where, "he cannot function at a two year old level, much less a four year old level." Tr. at 216. She was concerned that if J.A. were sent to Anne Beers, he would "not be able to cope at all and he would regress." Tr. at 216. Once again, the Hearing Officer fails to include any references to the parents' testimony in his decision. So much for due process protections.

In direct contrast to the parents' expert testimony, DCPS presented testimony from two witnesses, Zondra Johnson, a supervisor for the C.A.R.E. Center, and Rhoda Matthews, a special education coordinator at Anne Beers. Neither Ms. Johnson nor Ms. Matthews were admitted as expert witnesses in their fields. Furthermore, in contrast to the parents' witnesses who had worked with J.A. and had personal knowledge of him, Ms. Johnson based her testimony on a single observation of J.A. Ms. Matthews had not even accomplished that; she had never met or observed J.A. and based her testimony solely on her review of records. Despite all of this, the Hearing Officer gave complete deference to the DCPS witnesses while completely ignoring the expert and parental testimony presented for J.A.

-17-

The law is clear that a Hearing Officer must not give absolute deference to the school system officials. "A Hearing Officer and a district court must 'give appropriate deference to the decisions of professional educators' because the 'task of education belongs to the educators.'" *M.M. v. Sch. Dist. of Greenville County*, 303 F.3d 523, 533 (4th Cir. 2002), citing *Springer,* 134 F.3d at 663. However, deference to the professional educators does not "somehow relieve the Hearing Officer or the district court of the obligation to determine as a factual matter whether a given IEP is appropriate. . . . the fact-finder is not required to conclude that an IEP is appropriate simply because a teacher or other professional testifies that the IEP is appropriate." *Z.P.*, 399 F.3d at 307. Further, "giving deference only to school personnel based on their personal experience with a student and their perspective of the record would **eliminate the need for a due process hearing**." *K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 545 F.Supp.2d 995, 1004 (N.D. Cal. 2008), citing *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) (emphasis added). Of course, the situation here is not even one where DCPS' witnesses had any familiarity with the student. Rather, Ms. Johnson had observed J.A. just once while at West, and Ms. Matthews had never met J.A. at all.

The Court of Appeals for the District of Columbia Circuit has historically held that even though a court must give "due weight" to the expertise of school officials who are responsible for educating a child, "where there is no indication that the school officials' expertise has been brought to bear on the individual needs of the handicapped child, however, the deference granted will be commensurately lower." *McKenzie v. Smith*, 771F.2d 1527, n.17 (D.C. Cir. 1985). Furthermore, subsequent courts have time and again overturned the decision of Hearing Officers for failing to give appropriate weight to the testimony of experts. For example, in the unreported

case of *Oelman v. McKenzie*, 1988 WL 78853 (D.D.C. 1988), in overturning the decision of the Hearing Officer, this Court was "struck by the Hearing Officer's disregard of the special needs of [the student]." The Court went on to explain that despite compelling evidence by the parents, the Hearing Officer failed to discuss the specific needs of the student and how those well-documented needs would affect her special education program. *Id*. at 2. Twenty years later, *Oelman* is still being repeated in this action.

Recently, in *K.S. ex rel. P.S. v. Fremont Unified Sch. Dist*., 545 F.Supp.2d 995, 1004 (N.D. Cal. 2008), the Court specifically held that witnesses on both sides should be held to the same standard. There, the Administrative Law Judge ("ALJ") found the school district witness who "had no contact whatsoever with the plaintiff and based her analysis entirely on the school record," to be most credible. In direct contrast, the ALJ found the parents' witnesses less credible **based on their lack of extensive personal contact with the plaintiff**. *K.S.*, 4 F. Supp.2d at 1005-1005. The ALJ relied on the district's witness' analysis, which he found to be "consistent with the record created by the District and the opinions of other District witnesses." *Id*. at 1005. Not surprisingly, the District Court found this reasoning to be "illegitimate," and "arbitrary and capricious because it applied a separate and higher standard to plaintiff's witnesses." *Id*. at 1004. Furthermore, applying this sort of analysis would create a situation in which, "no student would ever be able to prevail against a school district because school districts would merely hire experts to corroborate the school district's version." *Id*.

Here, the Hearing Officer did even more damage to due process, giving complete deference to the DCPS witnesses. His single finding of fact on the issue of placement mentions only DCPS witnesses: "According to the testimony of DCPS Special Education Coordinator at

Anne Beers and Ms. Zondra Johnson, Supervisor at CARE Center, the placement at Anne Beers is appropriate to meet the student's needs." This is not the standard set forth by the IDEA or Supreme Court. The Hearing Officer fails to mention what specific testimony and evidence he relies on in reaching his conclusion, and fails to include even one reference to the parents' multiple witnesses who presented expert testimony. One thing is clear: these findings of fact were *not* "regularly made" and are not entitled to any deference by this Court.

V.    **THE CLEAR AND UNREFUTED TESTIMONY AND EVIDENCE AT THE HEARING DEMONSTRATE THAT DCPS FAILED TO PROVIDE J.A. WITH A FAPE.**

The Supreme Court has held that the right to a FAPE under the IDEA is comprised of two equal parts, due process of law and a substantively adequate IEP. "First, has the [educational agency] complied with the procedures set forth in the Act, and second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-07. J.A. was deprived of a FAPE under both sets of circumstances.

Historically, federal courts have held that "failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school board has failed to provide [the student] with a FAPE." *Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988) (*quoting Hall v. Vance*, 774 F.2d 629, 635 (4th Cir. 1985); *see also, Hudson by and Through Tyree v. Wilson,* 828 F.2d 1059, 1063 (4th Cir. 1987) (holding that "procedural noncompliance can itself support a finding that a child has not been provided with a FAPE"); *Gerstmyer v. Howard County Pub. Sch.*, 850 F. Supp. 361, 364-5 (D. Md. 1994); *Reusch v. Fountain*, 872 F. Supp. 1421 (D. Md. 1994).

-20-

Federal courts draw a distinction between minor procedural violations that do not affect the provision of free, appropriate education to the student, and violations that interfere with such a provision, or in J.A.'s case, completely thwart it. *See Gadsby v. Grasmick*, 109 F.2d 940, 956 (4th Cir. 1997). Courts have generally considered the issue of procedural violations from the perspective of the impact of the school system's failures. In *Sanger v. Montgomery County Bd. of Educ.*, 916 F. Supp. 518, 526-527 (D.Md. 1996)*,* the Court held that, "to the extent that there may be failure to comply strictly with the IDEA's procedures, the Court must consider whether the failures have caused a loss of 'educational opportunity' or are merely technical in nature. *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990)."

Here, there can be no question as to the adverse educational impact of the school system's omissions and failure to adequately create a program for J.A. DCPS failed to provide progress reports, failed to have complete IEP teams present at the IEP meetings, failed to revise the IEP and after all this, still proposed a change of placement. Simply put, DCPS failed to provide J.A. with the FAPE that is his right by its failure to comply with the clear requirements of federal and D.C. law, thereby denying him a timely, legal, complete or appropriate IEP and placement.

### A.    DCPS Committed Numerous Procedural Violations that Resulted in a Denial of FAPE.

The inquiry as to the scale and impact of IEP procedural violations need not take long here; DCPS committed wholesale violations of the critical IEP process by failing to have a complete IEP team present, failing to revise the IEP, and then proposing an inappropriate program for J.A. It admittedly ignored many of the most crucial IEP requirements.

The IDEA sets forth the many requirements that a school system faces when drafting an

IEP.  Specifically, 20 U.S.C. § 1414(d)(1)(A)(I) requires the following:

> The term "individualized education program" or "IEP" means a written statement
> for each child with a disability that is developed, reviewed, and revised in
> accordance with this section and that includes –
> (I)     a statement of the child's present levels of academic achievement and
>          functional performance, including –
>          (aa)    how the child's disability affects the child's involvement and
>                   progress in the general education curriculum;
>          . . .
> (II)    a statement of measurable annual goals, including academic and functional
>          goals, designed to –
>          (aa)    meet the child's needs that result from the child's disability
>                   to enable the child to be involved in and make progress in
>                   the general education curriculum; and
>          (bb)    meet each of the child's other educational needs that result from the
>                   child's disability;
> (III)   a description of how the child's progress toward meeting the annual goals
>          described in subclause (II) will be measured and when periodic reports on
>          the progress the child is making toward meeting the annual goals (such as
>          through the use of quarterly or other periodic reports, concurrent with the
>          issuance of report cards) will be provided;
> (IV)   a statement of the special education and related services and supplementary
>          aids and services, based on peer-reviewed research to the extent practicable,
>          to be provided to the child, or on behalf of the child, and a statement of the
>          program modifications or supports for school personnel that will be
>          provided for the child –
>          (aa)    to advance appropriately toward attaining the annual goals;
>          (bb)    to be involved in and make progress in the general education
>                   curriculum in accordance with subclause (I) and to participate in
>                   extracurricular and other nonacademic activities; and
>          (cc)    to be educated and participate with other children with disabilities
>                   and nondisabled children in the activities described in this
>                   subparagraph;
> (V)    an explanation of the extent, if any, to which the child will not participate
>          with nondisabled children in the regular class and in the activities described
>          in subclause (IV)(cc);
>          . . .
> (VII)   the projected date for the beginning of the services and modifications
>          described in subclause (IV), and the anticipated frequency, location, and
>          duration of those services and modifications;

. . .

20 U.S.C. § 1414(d)(1)(A)(I).

We also draw this Court's attention to 20 U.S.C. § 1414(d)(1)(B), which mandates the

participants of an IEP team:

> The term "individualized education program team" or "IEP Team" means a group
> of individuals composed of –
>
> (I)    the parents of a child with a disability;
>
> (ii)   not less than 1 regular education teacher of such child (if the child
>        is, or may be, participating in the regular education environment);
>
> (iii)  not less than 1 special education teacher, or where appropriate, not
>        less than 1 special education provider of such child;
>
> (iv)   a representative of the local educational agency who –
>
>        (I)    is qualified to provide, or supervise the provision of,
>               specially designed instruction to meet the unique needs of
>               children with disabilities;
>
>        (II)   is knowledgeable about the general education curriculum;
>               and
>
>        (III)  is knowledgeable about the availability of resources of the
>               local educational agency;
>
> (v)    an individual who can interpret the instructional implications of
>        evaluation results, who may be a member of the team described in
>        clauses (ii) through (vi);
>
> (vi)   at the discretion of the parent or the agency, other individuals who
>        have knowledge or special expertise regarding the child, including
>        related services personnel as appropriate; and
>
> (vii)  whenever appropriate, the child with a disability.

20 U.S.C. § 1414(d)(1)(B).  The salient requirements here are in subsections (ii), (iii) and (v),

which mandate the participation of a regular educator of the child, a special educator of the child,

and individuals with expertise in interpreting J.A.'s complex needs.

The school system's admitted procedural violations are far from technical in nature.  The

omission of mandatory personnel and information directly resulted in an IEP that is admittedly

incomplete and, therefore, inappropriate.  Without an appropriate IEP, there is no way that DCPS could provide a FAPE to this student.

### i.     The School System Failed to Assemble a Complete IEP Team.

The IDEA mandates the specific group of individuals who compose the "IEP Team."  The importance of full participation in IEP meetings has been highlighted by the Supreme Court since it first considered the IDEA:  "[T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP . . . demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of the substantive content of the IEP."  *Rowley*, 48 U.S. at 206.  Further, "[a] regular education teacher of the child, as a member of the IEP Team, must . . . participate in the review and revision of the IEP of the child."  34 C.F.R. § 300.324(b)(3).

The IEP teams at both the June and August IEP meetings fell woefully short of the IDEA requirements.  Specifically, the only individuals present at the June meeting, besides the parents and Ms. Owens, were two representatives from DCPS  – Ms. Johnson, the CARE Center supervisor, and Ms. Lowry, a program specialist.[8]  Admin. Rec. at 113.  Notably absent from this team were a general educator and special educator with knowledge of J.A.'s educational needs,[9] and all related service providers.  The follow-up meeting in August was similarly lacking a complete IEP team: once again, and despite the previous objection of the parents, DCPS failed to

---

[8]     Ms. Lowry, a special education teacher at the C.A.R.E. Center, was not even familiar with J.A and had never been his teacher.  Tr. at 154.

[9]     While Courts have not interpreted the IDEA to require that the student's current regular and special education teacher be a part of the IEP team, it must include teachers who have taught the student.  *R.B.,* 496 F.3d 932 at 938-40.

have a general educator or special educator with knowledge of J.A. at the meeting.[10]  Moreover,

an Occupational Therapist was absent from the team.  Admin. Rec. at 127.  There were therefore

no individuals who could speak directly to J.A.'s progress, skills or weaknesses at West

Courts have long held that the meaningful participation of such individuals in IEP

development is essential.  *See, e.g. Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist.*,

317 F.3d 1072, 1076-77 (9th Cir. 2003) (holding that the failure to include "the teachers most

knowledgeable about [the child's] special educational levels and needs" was a violation of the

IDEA); *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001) (holding that,

"procedural violations that interfere with parental participation in the IEP formulation process

undermine the very essence of the IDEA."); *W.G. v. Board of Trustees of Target Range Sch.*

*District*, 960 F.2d 1479, 1484 (9th Cir. 1992) (holding that, "[I]n its decision to place R.G. in

special education classes at Target Range and in the particular program there, [the school system]

did not consider the recommendations of persons 'knowledgeable' about R.G., as required by 34

C.F.R. § 300.533.");  *R.B. v. Napa Valley Unified Sch. Dist.* 496 F.3d 932 (9th Cir. 2007); *Taylor*

*by Holbrook v. Board of Educ.*, 649 F. Supp. 1253, 1256-58 (N.D.N.Y.1986) (holding that where

the school system failed to consider recommendations of persons "most knowledgeable" about the

student, including his teacher and doctors, the proposed IEP could not be considered as reasonably

---

[10]    The special educator on the team, Marion McDowell, had no knowledge of J.A. and was simply on the team to fill the position of "special educator." Tr. at 173-74.

calculated to enable the student to receive educational benefits); *Gill v. Columbia 93 Sch. Dist.*, 217 F.3d 1027, 1034 (8th Cir. 2000).[11]

Moreover, where "[t]he IEP team did not include individuals Congress concluded were most knowledgeable about a disabled student's special education needs . . . [the court] has no way of determining whether the IEP team would have developed a different program after considering the views of a regular education teacher." *M.L. v Federal Way Sch. Dist.*, 394 F.3d 634, 646 (9th Cir. 2005). *See also, Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 860 (9th Cir. 2004) ("The input provided by a regular education teacher is vitally important in considering the extent to which a disabled student may be integrated into a regular education classroom and how the student's individual needs might be met within the classroom.")

Here, on both occasions, a regular educator was not included on J.A.'s IEP team, and the Court has no way of knowing whether the teacher's presence would have led to a different result. Moreover, the lack of individuals with specific knowledge about J.A.'s performance at West, as required by the IDEA, was critical in assessing the appropriateness of the IEP and considering a change in placement. Furthermore, the school system's failure to have an Occupational Therapist was problematic since it was the one area that the school reported that J.A. had made some progress, yet there was nobody there to explain the progress or recommend revisions to the IEP based on that progress. The presence of these individuals was of critical importance and the

---

[11]       "[The school system's] failure to secure the participation of [such individuals] also resulted in violations of section 1414(a)(1), which requires preparation of a comprehensive evaluation of the student as a basis for developing the IEP, and section 1401(a)(19) which specifies the elements necessary for a complete IEP. *W.G.*, 960 F.2d at 1484

failure of DCPS to assemble a complete IEP team clearly resulted in a denial of FAPE.  The

Hearing Officer missed all of this although the factual record was clearly established.

> **ii.      The Hearing Officer Failed to Give Weight to the School System's Failure to Revise J.A.'s IEP and its Subsequent Decision to Issue a Change of Placement.**

Despite the failure of J.A.'s teachers to measure his progress on a monthly basis as

required by his IEP, there was a general consensus by the IEP team that J.A. had not made any

progress, and may have in fact regressed.  Indeed, the progress report prepared by J.A.'s special

education teacher, though sparse and lacking in any measurable data, indicated a widespread

failure to master cognitive and Speech/Language goals, and showed further lack of progress in

adaptive skills, social and emotional skills, etc.  In fact, only the Occupational Therapist indicated

that J.A. had "made some progress in meeting his goals."  Admin. Rec. at 114.  These across-the-

board failings clearly suggested not only that West was an inappropriate placement, but also that

the IEP failed to address J.A.'s unique needs.  How, in the face of such failure, DCPS could think

the situation could be rectified without revising the IEP is beyond comprehension.

Moreover, the IEP team admittedly convened in June with the intent to revise his IEP.

Yet, somehow, at the August IEP meeting the team suddenly decided that the IEP no longer

needed to be revised and that the IEP was appropriate.[12]  This decision was made without the

input of essential IEP team members, such as J.A.'s teachers, the Occupational Therapist, or the

---

[12]      It should be noted that, in addition to failing to make a single revision to the IEP goals and objectives, DCPS also failed to update the present levels of performance, accommodations and modifications, or supplementary aides and services.  These are all essential pieces of an IEP. This failure is made even more egregious in light of the school system's decision to dramatically change J.A.'s placement from an inclusion setting to a self-contained special education classroom.

general educator.  Moreover, the team recognized that the IEP as written and implemented had

failed to produce any progress for J.A., and in fact caused regression.[13]  The IDEA requires that

children with disabilities demonstrate educational progress through the use of an IEP.  That IEP

must be likely to produce progress, not regression.  *Hall*, 774 F.2d at 636.  Because the IEP failed

to produce progress, and in fact caused regression, it was clear to the team that revisions were

necessary.  Yet, they failed to make these revisions.

### iii.    DCPS Failed to Proposed an Appropriate Placement.

After failing to assemble a complete IEP team and failing to revise the IEP, DCPS, in

perhaps its most egregious move, proposed a change in placement for J.A. to Anne Beers.  34

C.F.R. § 300.116(a)(1) requires that a placement decision must be, "made by a group of persons,

including the parents, and other persons knowledgeable about the child, the meaning of the

evaluation data, and the placement options."  Furthermore, 34 C.F.R. § 300.116(b)(2) states that a

"child's placement . . . is based on the child's IEP."  The IEP is the cornerstone of the special

education program, and an inappropriate IEP by default renders the placement based on that IEP

inappropriate.  *Friedman v. Vance*, 24 IDELR 654 (D. Md. 1996).  This is the rule under the

IDEA, and this Court and the neighboring Fourth Circuit have long upheld it:

> The district court found that the defendants decided to change [the student's]
> placement from [one school to another] before developing a new IEP to
> support the change.  Under the [IDEA], the general rule is that placement
> should be based on the IEP...The decision to place [the student at a certain
> school] before developing an IEP on which to base that placement violates
> this [federal] regulation as interpreted by the Secretary of Education.

---

[13]    The MDT notes from the meeting state that, ". . . the documentation provided by the
teacher indicates that little progress was made and additionally the parent reports that [J.A.]
demonstrated some regression."  Admin. Rec. at 215.  Furthermore, Ms. Johnson testified that
the team, ". . . agreed with the parent that progress had not been made [at West]."  Tr. at 159.

*Spielberg v. Henrico County Public Schools*, 853 F.2d 256, 258-259 (4th Cir. 1988) (footnotes and some citations omitted), citing *Hall,* 774 F.2d at 635 (4th Cir. 1985).  Thus, where an IEP is based on incomplete information, it is necessarily inappropriate, as is any placement based on it.

Since an IEP "drives" a placement, that IEP must address all of the child's needs – in full and correctly – in order for any placement based on that IEP to be appropriate.  In other words, there can be no determination of the appropriateness of a proposed placement without reference to the appropriateness of the IEP.  The IDEA defines a free appropriate public education as "special education and related services that . . . (D) are provided in conformity with the individualized education program . . . ."  20 U.S.C. §1401(9).

Thus, where an IEP is based on incomplete information, or where it is not tailored to address a student's needs, it is necessarily inappropriate, and any placement based upon this IEP must inevitably also be inappropriate.  DCPS violated these mandates and therefore never offered J.A. a FAPE.  The Hearing Officer's findings to the contrary (or lack of findings) are in direct and overt contravention of the facts and law.

> **iv.     The Hearing Officer Erred in Failing to Recognize That the Procedural Violations Resulted in an Inappropriate IEP and, Thus, an Inappropriate Placement.**

Where a procedural violation of the IDEA exists, the Court must "assess whether it resulted in the loss of an educational opportunity for the disabled child, or whether, on the other hand, it was a mere technical contravention of the IDEA."  *M.M.*, 303 F.3d at 533, citing *Gadsby*, 109 F.3d at 956.  Here, there can be no doubt that the procedural failures of DCPS resulted in a loss of educational benefit for J.A.

DCPS acknowledged that the reason for postponing the initial IEP meeting was due to the lack of measurable data. Were it not for that error, and notwithstanding the procedural failure to assemble a complete IEP team, it is possible that J.A.'s IEP would have been revised and an appropriate placement based on that IEP could have been proposed. Instead, DCPS committed numerous violations which resulted in an inappropriate IEP and placement. Accordingly, J.A. was denied the educational opportunity for an appropriate program and placement, and thus denied a FAPE.

**B.     Funding of a "Proper" Parental Placement is Appropriate When a Student Has Been Denied FAPE.**

The appropriate remedy for defendants' IDEA violations is the reimbursement of the cost of his private placement, with related services for the entire 2007-08 school year. The U.S. Supreme Court instructs:

> When a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."

*Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156 (4th Cir. 1991) (quoting *Rowley*, 458 U.S. at 207); *see also* , 471 U.S. 359. Therefore, placement and funding for J.A. is the appropriate remedy under the IDEA.

Under  and *Carter*, once it has been determined that defendants failed to provide J.A. with a FAPE by the start of the school year, the Court's inquiry then turns directly to the propriety of the parental placement. "Public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the

State's choice." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) . Thus, the appropriate inquiry for this Court is twofold: first, whether the school system has offered J.A. a FAPE, and second, whether the parents' placement is a proper educational placement for J.A. Since DCPS failed to provide J.A. an appropriate placement, his parents were justified and correct in selecting a placement that was appropriate for their son's needs.

Testimony from both Stephanie Owens and Dr. Griffin Doyle demonstrated beyond a doubt that J.A. is receiving educational benefit at Jenny Waelder Hall and that it is an appropriate placement for him. After observing J.A. at Jenny Waelder Hall Ms. Owens testified that, "I feel that Jenny Walter [sic] Hall is an appropriate placement for [J.A.]." Tr. at 48. Dr. Doyle also agreed that it was appropriate for him, and that the work that he was doing with J.A. was critical to his success. Tr. at 93. Moreover, DCPS did not present any evidence – expert or otherwise – to suggest that Jenny Waelder Hall was an improper placement for J.A., nor does the Hearing Officer render an opinion as to the placement.

Where a school district has denied a student a free appropriate public education, and the parental placement is proper, reimbursement should be ordered. Here, DCPS denied J.A. a FAPE, and the parental placement at Jenny Waelder enabled J.A. to receive educational benefit. Thus, reimbursement is proper under the IDEA.

## VI.    CONCLUSION.

In light of the Hearing Officer's failure to issue a minimally adequate decision, or order an appropriate remedy for the defendants' violations of the IDEA, this Court should correct his error and order DCPS to reimburse J.A.'s parents for his placement at Jenny Waelder for the 2007-2008 school year, as well as all related services. As there are no material facts in dispute and because

plaintiffs are entitled to judgement against the defendants, plaintiffs respectfully request that this

Court enter summary judgment against the defendants, that the Hearing Officer's order be

reversed, and that defendants be ordered to reimburse plaintiffs for the expenses incurred in

enrolling J.A. at Jenny Waelder Hall for the 2007-2008 school year, with all related services,

transportation, costs and attorneys' fees.


Respectfully submitted,


_____/s/_____
Michael J. Eig        #912733
Matthew B. Bogin     #911552
Paula A. Rosenstock  #494580
Patricia F. Cyr       #490755

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs

-32-

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J.A., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 08-CV-0580 (RJL) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**ORDER**

Upon consideration of the plaintiffs' motion for summary judgment, along with the related pleadings and any opposition thereto, it is the finding of the Court that the facts are not in dispute, that the plaintiffs are entitled to judgment as a matter of law, and it is by the Court, this _____ day of _____, 2008, hereby

ORDERED, that plaintiffs' motion for summary judgment be and the same is hereby GRANTED; and it is

FURTHER ORDERED, that the administrative decision is reversed, and it is

FURTHER ORDERED, that defendants are to reimburse the plaintiffs for the costs incurred in enrolling J.A. at Jenny Waelder Hall Center from the start of the 2007-08 school year, with all related services, transportation, attorneys' fees and costs.

_____
United States District Judge

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### Clifford B. Janey, Ed. D, Chief State School Officer



## *The Special Education Student Hearing Office*
## *Due Process Hearing*
## *Standard Operating Procedures*

*A Handbook for Hearing Officers, the Local and State Educational Agencies, Parent / Child's Representatives, and the Student Hearing Office Staff*

**District of Columbia Public Schools**
**State Enforcement & Investigation Division**
**Special Education Programs**
**Student Hearing Office**
**825 North Capitol Street NE, Suite 8076**
**Washington, DC   20002-1994**
**Phone:  (202)442-5432   /   Fax:  (202)442-5556**

1

**www.k12.dc.us**

# Table Of Contents

**Rules**

**SECTION I**          INTRODUCTION ....................................................   4

**SECTION II**         STUDENT HEARING OFFICE ...................................   5

   §   200      Purpose.................................................................   5
   §   201      General Responsibilities .......................................   5
   §   202      Hours of Operation ..............................................   7
   §   203      Filing of Pleadings & Documents ...........................  7
   §   204      Service of Documents ...........................................   8
   §   205      Fairness and Impartiality ......................................   8
   §   206      Civility and Decorum ............................................   9

**SECTION III**        THE DUE PROCESS HEARING ............................   9

   §   300      OVERVIEW ...........................................................   9
   §   301      Requesting a Due Process Hearing ..........................   9
   §   301.1    Filing a Due Process Complaint...............................   9
   §   301.2    Contents & Timeline for Filing Complaint ..................  11
   §   302      Requesting Hearing  Against Charter School ...............  12
   §   302.1    Notice of Appearance by Charter School Attorney.........  12
   §   303      Responding to a Due Process Complaint ....................  13
   §   304      Pre-hearing Matters ..............................................  14

   §   400      DUE PROCESS HEARING ......................................... 17
   §   400.1    Scheduling the Hearing ......................................... 17
   §   401      Motions .............................................................. 20
   §   402      Continuances ....................................................... 21

   §   500      PREPARING FOR THE HEARING ............................... 25

   §   600      THE HEARING OFFICER ......................................... 25
   §   600.1    Authority and Responsibilities ......................................25
   §   600.2    Qualifications of Hearing Officers ................................26

2

§    600.3    **Ex Parte Communications Prohibited** …………………..…**27**
§    600.4    **Disqualification of Hearing Officer** ……………………..…**27**

§    700    **HELPFUL INFORMATION ABOUT**
                **DUE PROCESS HEARINGS** ……………………………………**28**

§    700.1    **General Information** …………………………………....**28**
§    700.2    **Purpose** ……………………………………………… **28**
§    700.3    **Failure to Appear** ……………………………………… **29**
§    700.4    **Conducting the Hearing** ……………………………... **29**
§    700.5    **Burden of Proof** ……………………………………… **30**

§    800    **RIGHTS** …………………………………………… **30**

§    800.1    **Rights of All Parties** ……………………………… **30**
§    800.2    **Special Rights of Parents** ………………………… **32**

§    900    **PRACTICE OF LAW** ……………………………… **33**

§    1000    **ATTORNEYS AND ATTORNEYS FEES** ……………… **33**

§    1001    **EVIDENCE** ………………………………………… **34**

§    1002    **OUTCOMES** ………………………………………… **34**

§    1002.1    **Settlement** ……………………………………… **34**
§    1002.2    **Dismissal** ……………………………………… **35**
§    1002.3    **Withdrawal** …………………………………… **35**

§    1003    **THE HEARING OFFICER'S DETERMINATION** ………… **35**

§    1004    **FINAL DECISION AND RIGHT OF APPEAL** ……………. **36**

§    1005    **RECONSIDERATION OF HEARING DECISION** ………… **36**

§    1006    **HEARING RECORD AND TRANSCRIPT** ………………. **36**

§    1007    **REQUESTING A TRANSCRIPT** ……………………… **37**

§    1008    **EXPEDITED DUE PROCESS HEARING** ……………… **37**

**SECTION IV**    **CONCLUSION** ……………………………………… **38**

**APPENDIX** ……………………………………………………….... **39**

3

**Model Due Process Complaint Notice** …………………………………. **40**

**Model Notice To Appear form** …………………………………………. **44**

# SECTION I
# INTRODUCTION

**FACT**    More than 11,000 children receive special education and related services in the District of Columbia.

**FACT**    Parents and schools do not always agree about a child's special education identification, evaluation, eligibility, program, or placement.

**FACT**    Children are best served when parents and educators work together.

**FACT**    Federal special education law affords children, their parents, and educational systems certain legal rights when disputes arise, including the right to a due process hearing.

The information in the Standard Operating Procedures Manual for the Student Hearing Office is not intended as legal advice or as an interpretation of the laws and regulations governing special education in the United States. All individuals are urged to seek professional legal advice for guidance in understanding the laws, rules, and regulations that govern special education. The Student Hearing Office will provide information about any free or low-cost legal services available in the District of Columbia upon request. These guidelines will, however, help individuals understand the implementation of these laws in the District of Columbia and the steps for filing a due process complaint to obtain a due process hearing. This document also details procedures to be followed by the Student Hearing Office ("SHO"), the Independent Hearing Officers assigned to conduct due process hearings on disputed issues, and the representatives of the Local Educational Agency (LEA), the State Educational Agency (SEA), and parents/children. You are also invited to visit the District of Columbia Public

4

Schools (DCPS) website (www.k12.dc.us) for additional information about special education and other dispute resolution options.  Unless otherwise specified, all days in this handbook are defined as calendar days.

# SECTION II

# THE SPECIAL EDUCATION STUDENT HEARING OFFICE

## § 200        PURPOSE

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, requires each state and the District of Columbia to establish and maintain procedures to ensure that parents and children with disabilities have an opportunity to seek mediation and/or an impartial due process hearing to resolve disagreements over the identification, evaluation, educational placement, or provision of a free appropriate public education for students with disabilities.  These Standard Operating Procedures are designed to implement the requirements of the IDEA and to give notice to the public.  Copies of these procedures shall be maintained at all District of Columbia Public and Charter schools and a copy shall be provided without cost or delay to any person on oral or written request.  If there is any conflict between the Standard Operating Procedures and the IDEA or the *Blackman/Jones* Consent Decree, the IDEA or the *Blackman/Jones* Consent Decree govern.

## § 201        GENERAL RESPONSIBILITIES

A.    The due process system is administered in the District of Columbia by the Student Hearing Office in the State Enforcement & Investigation Division for Special Education Programs in accordance with the IDEA, 20 U.S.C. § 1400 *et seq.* and Title 5 of the District of Columbia Municipal Regulations

5

(5 DCMR § 3000, *et seq.*). The Student Hearing Office is responsible for the following:

1. Receiving the written due process complaint for requesting a due process hearing;
2. Scheduling, or coordinating with the Hearing Officer to schedule the hearing, within the statutory time limit;
3. Contracting and assigning an impartial Hearing Officer;
4. Notifying the parties to the hearing of the time and place of the hearing;
5. Providing and coordinating logistical support for the hearing such as adequate space, recording equipment, and an impartial and qualified interpreter who is not an employee of DC Public Schools, if needed;
6. Obtaining transcripts and audio recordings of hearings and retaining copies;
7. Providing copies of transcripts and recordings upon request;
8. Maintaining historical statistical data and archiving hearing files;
9. Processing pre-hearing matters;
10. Maintaining records of due process hearings;
11. Publishing Hearing Officer Determinations; and
12. Promptly and professionally respond to inquiries.

B. The Student Hearing Office shall maintain sufficient staff, equipment, and other resources and implement appropriate training, supervision, and other practices to ensure that hearings are held in a timely and professional manner. The Student Hearing Office administrative support staff will ensure:

1. Office staff promptly and professionally respond to inquiries and otherwise perform their duties competently.
2. Office space is sufficient to provide reasonable working space for the staff at all times and for the use of Hearing Officers in the period before, after and between hearings.
3. Hearings have adequate time and space to be conducted in the time reasonably requested by the parties or allotted by a Hearing Officer.
4. The telephone is answered promptly and professionally during normal business hours; in the exceptional situations in which the telephone cannot be answered promptly (e.g., 5 or more calls come in simultaneously), calls immediately roll over to an answering machine or voice mail system that has sufficient memory to handle all messages.

6

5.   After normal business hours, calls immediately roll over to an answering machine or voice mail system that has sufficient memory to handle all messages.

6.   All messages handled by the answering machine or voice mail are retrieved promptly and calls returned no later than the close of the next business day, unless exceptional circumstances prevent it.

7.   Incoming communications and documents, including faxes, are received and documented promptly by date stamp; outgoing faxes are sent promptly, and the fax machine produces written transmittal confirmation for each fax attempted.   Requests for copies of certified records, transcripts and audio recordings of pre-hearing conferences and hearings shall be kept in a log maintained by the SHO.   Five-day disclosures, due process complaints, amended complaints, and HODs shall be logged into the ENCORE data base and tracking system.

8.   The Student Hearing Office shall provide and maintain in working order a date stamp machine for use by persons submitting documents by hand and will provide personnel to date stamp documents received by mail. SHO personnel shall return date-stamped documents by mail no later than the next business day if self-addressed postage-prepaid envelopes are provided.

9.   Case files for each Hearing Request are accurately maintained and include documentation of all correspondence, including fax transmittal confirmations, 5-day disclosures, and all documents from related cases involving the same student.

10.   All notices, decisions, and other correspondence are transmitted in a timely manner to the parties.

11.   The Student Hearing Office shall maintain and provide for staff and Hearing Officers reasonable working conditions.

12.   Hearing Officers shall be adequately and timely compensated. Hearing Officer compensation shall be competitive with comparable jurisdictions and sufficient to ensure there are enough Hearing Officers to ensure timely hearings. In addition, Hearing Officers shall be provided reasonable assistance from the Student Hearing Office staff so that the Hearing Officers can function efficiently without undue burdens from clerical responsibilities.

# § 202        SHO HOURS OF OPERATION

The Student Hearing Office shall open at 8:30a.m. and remain open until 5:00p.m. Monday through Friday except for District of Columbia holidays.

# § 203    FILING OF PLEADINGS & DOCUMENTS

1.    Except as otherwise provided, all documents, pleadings, and motions shall be filed with the State Enforcement & Investigation Division for Special Education Programs, Student Hearing Office, 825 North Capitol St., N.E., Washington, D.C. 20002.  All facsimile filings shall be sent to the following facsimile number: (202)442-5556, which is a dedicated fax line.

2.    Electronic filing of documents is not permitted and will not be accepted for filing.

3.    All documents received for filing by 5:00 p.m. Eastern Time will be accepted for filing that day.  All documents filed after 5:00 p.m. Eastern Time, and all documents filed on any  designated holiday, Saturday,  or Sunday shall be deemed filed on the following business day, except as provided in ¶ 1 above.

4.    Upon the filing of any pleading or motion an attorney is certifying that to the best of the his/her knowledge, information and belief, after an inquiry reasonable under the circumstances, that (a) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (b) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (c) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a  reasonable opportunity for further investigation or discovery; and (d) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

5.    Notice of Appearance of Legal Counsel.  The filing of a Notice of Appearance or other pleading by an attorney on behalf of a party in comformity with the requirements of this section shall constitute the entry of an appearance by the party.  All pleadings and other papers filed by the attorney shall set forth the name, full business or street address, telephone number, and fax number, if any, of the attorney.  Subsequent notices, pleadings, and documents shall be served on the attorney of record or, if not represented, the party.

# § 204    SERVICE OF DOCUMENTS

Unless otherwise provided by law, every letter or document, including every pleading, motion, or notification filed with the Student Hearing Office shall simultaneously be served on all parties or party representatives by the same method as the document was filed with the SHO, except that service by facsimile may be substituted for personal service.

## § 205    FAIRNESS AND IMPARTIALITY

The staff of the Student Hearing Office is not part of nor under the supervision of any District of Columbia Public Schools division or staff office that will participate in the hearing or implement the decision of the Hearing Officer. In fairness to all parties, the Staff shall maintain neutrality and neither favor nor promote the interests of the litigants who participate in due process hearings, and will neither express nor imply an opinion about the outcome of a hearing to anyone seeking information regarding the substantive merit of any claim. The Staff may advise parents/students where to obtain low or no cost legal counsel and refer inquiries to other offices in DCPS.

## § 206    CIVILITY AND DECORUM

All parties and counsel involved in a Special Education Due Process Hearing, including hearing officers, are expected to act with respect and decorum. Rude, offensive, and unprofessional conduct such as inappropriate language, angry outbursts and threatening statements directed at any other person or party is absolutely prohibited.  All attorneys are governed by the D.C. Rules of Professional Conduct.  The hearing officer has the responsibility for maintaining the integrity and orderly conduct of the hearing process, ensuring that the rights of all parties are protected, and maintaining an atmosphere conducive to impartiality and fairness at all times.  When appropriate, the hearing officer may exclude any person, halt or suspend a hearing, consider a referral to Bar Counsel and/or summon appropriate law enforcement authorities to address any inappropriate conduct or misbehavior by any person that disrupts a hearing.

# Section III

# THE DUE PROCESS HEARING

## § 300    OVERVIEW

9

A special education due process hearing is an administrative proceeding during which the parties are given the opportunity to present witnesses, documentary evidence, and oral and written argument in support of their respective positions on disputed special education issues. A Hearing Officer then issues a written decision concerning the matters in dispute.

# § 301 REQUESTING A DUE PROCESS HEARING

## § 301.1  Filing a Due Process Complaint

A.    What must be filed.

To obtain a due process hearing, the complaining party must file a due process complaint.  A party may not have a due process hearing until a party, or the attorney representing the party, files notice of a due process complaint.

B.    Who may file a due process complaint.

Anyone (parent, student, Local Educational Agency (LEA), or the State Educational Agency (SEA)) may file a due process complaint. Typical reasons for filing a due process complaint by parents and students include, but are not limited to, disputes regarding:

1.    Eligibility for special education services;
2.    Identification of the child as a student with a disability;
3.    Results of an evaluation or need for an evaluation;
4.    The appropriate educational placement of the student;
5.    Entitlement to, types of, and quantity of compensatory education services/products;
6.    Appropriateness of the student's IEP;
7.    Proper implementation of the student's IEP;
8.    Transportation problems;
9.    Disciplinary actions taken by the school; or
10.   The provision of a free appropriate public education to a child with a disability.

C.    Typical reasons for which the Local Educational Agency (LEA) or State Educational Agency (SEA) may file a due process complaint to initiate a hearing include, but are not limited to, disputes regarding:

10

1. A parent's refusal to consent to an initial evaluation or reevaluation;

2. A parent's refusal to consent to the release of a record;

3. Placement of a child with a disability in an interim alternative educational placement for disciplinary reasons; or

4. The need for an independent evaluation.

D. <u>Notice</u>

1. LEA: Parents initiating a complaint must provide notice of the due process complaint to the Local Educational Agency ("LEA"). For students in traditional public schools, non-public day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St.,NE, Washington, D.C. 20002.  If the student attends a charter school, the parents must file notice of the due process complaint with the principal or director of the charter school.  LEAs or SEAs initiating a complaint must provide notice of the due process complaint to the parents.

2. Student Hearing Office: A written copy of the due process complaint must be filed with the Student Hearing Office, 825 N. Capitol St., NE, Washington, D.C. 20002. The complaint  may  be filed by mail, hand-delivery, or facsimile (unless the parent is unable to read or write or has a disability that prevents a written request).  If a parent or guardian is unable to read or write, is not fluent in English or has a disability that prevents a written request, Student Hearing Office personnel shall assist the parent or guardian in filling out the complaint or refer the parent to a legal services program that handles special education matters without charge and is open for intake or Advocates for Justice in Education, the District's Parent Training and Information Center.

3. Model Form: A model "Due Process Complaint Notice" form created by the State Education Agency may be used to give proper notice.  A copy of the model form is provided in the Appendix of this procedural manual.  DCPS will provide a copy of the form upon oral or written request. DCPS shall maintain an electronic copy of the form on its website with an easily identifiable link to the form from its homepage.   Copies of the form shall also be available on request by a parent at every District of Columbia Public School and Charter School and in the Office of Special Education, Office of the General Counsel, Student Hearing Office, State Complaint Office, the DCPS Care Center, Parent Resource Centers, Office of the

Superintendent, and the general office of the State Enforcement & Investigation Division. Nothing in these procedures shall be construed to require use of the model form so long as hearing requests filed in another manner comply with 20 U.S.C. § 1415(a)(7)(A) and § 301.2.B of these standard operating procedures.

# § 301.2  Contents of and Timeline for Filing the Due Process Complaint

A.    Timeline for Requesting Hearing: Two Year Limitation Period

    1.    Unless otherwise provided by law or regulation and except as provided in § 301.2.B., the due process complaint must be filed not more than two (2) years after the date that the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint.

B.    Exceptions to the Two Year Statute of Limitation Period

    1.    The timeline described in § 301.2.A.1 shall not apply to a parent if the parent was prevented from requesting the hearing due to:
        (a)    Specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
        (b)    The local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

    2.    Nothing stated above should be construed to limit the right of the parties to rely upon other applicable exceptions to the statute of limitations period.

C.    Contents of a Due Process Complaint.  The Due Process Complaint must contain the following information:

    a.    The name and address of the child.  In the case of a homeless child, available contact information for the child;
    b.    The name of the school the child currently attends;
    c.    A brief fact-based description of the problem or disagreement about the child's education;
    d.    A proposed resolution of the problem to the extent known, and

e.    The signature of the parent or complaining party.

# § 302    REQUESTING A HEARING WHEN THE STUDENT ATTENDS A CHARTER SCHOOL

The parents of a student who attends a charter school have the same right to request a due process hearing as the parent of a student who attends a traditional public school.  If the Charter School is a named party, a copy of the due process complaint must be provided to the principal or director of the charter school at the same time that it is filed with the Student Hearing Office.  The failure to issue notice of the complaint to a charter school that is a party will result in a delay in scheduling a due process hearing.

## § 302.1  Notice of Appearance For Charter School

The filing of a Notice of Appearance or other pleading by an attorney on behalf of a charter school in conformity with the requirements of this section shall constitute the entry of an appearance by the charter school.  All pleadings and other papers filed by the attorney shall set forth the name, full business or street address, telephone number, and fax number, if any, of the attorney.  Subsequent notices, pleadings, and documents shall be served on the attorney of record for the charter school.

# § 303    RESPONDING TO A COMPLAINT

A.    <u>Sufficiency of Complaint</u>.

A due process complaint shall be deemed sufficient unless the party receiving the due process complaint notifies the Student Hearing Office or assigned Impartial Hearing Officer (if a hearing officer has been assigned to the complaint) and the other party in writing within fifteen (15) days of receipt of the due process complaint that the receiving party believes the due process complaint does not meet the requirements of § 301.2.C.  For purposes of this provision, and consistent with § 204 above, the receiving party shall be presumed to have received the complaint on the date received by the student hearing office.

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

1.  Hearing Officer Decision on Sufficiency.  Within five (5) days of receipt of notification that a party believes the due process complaint is legally insufficient, an Impartial Hearing Officer shall make a determination based on the face of the notice whether the due process complaint is sufficient to meet the requirements of 301.2.C. and shall immediately notify the parties in writing of that determination.

2.  Amending the Due Process Complaint.

    a.  A party may amend its due process complaint only if:

        i.   The other party consents in writing to the amendment and is given the opportunity to resolve the due process complaint through a resolution session meeting held pursuant to 20 U.S.C. § 1415 (f)(1)(B) and any controlling federal or local regulations; or

        ii.  The hearing officer grants permission, except that the hearing officer may only grant permission to amend at any time not later than five (5) days before the due process hearing begins.

    b.  If a party files an amended due process complaint, the timelines for the resolution meeting and the time period to resolve the complaint begin again with the filing of the amended due process complaint.

3.  A party may not have a hearing on a due process complaint until the party, or the attorney representing the party, files a due process complaint notice that meets the above requirements.

B.  Response to Complaint by the Local Educational Agency

1.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint, the LEA shall, within ten (10) days of receiving the due process complaint, send to the parent a response that includes:

    a.  An explanation of why the agency proposed or refused to take the action raised in the due process complaint;

    b.  A description of other options that the IEP Team considered and the reasons why those options were rejected;

14

    c.      A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

    d.      A description of the other factors that are relevant to the agency's proposed or refused action.

    2.      A response by an LEA under this subsection B shall not be construed to preclude the LEA from asserting that the parent's due process complaint was insufficient, where appropriate.

C.      <u>Other Party Response to a Due Process Complaint</u>

Except as provided in section B. above, the party receiving a due processcomplaint must, within ten (10) days of receiving the due process complaint, send to the other party a response that specifically addresses the issues raised in the due process complaint as set out at 20 U.S.C. 1415(c)(2)**.**

D.      Parties should be cognizant of the 10 day statutory period for filing the response noted in § 303.C.1.   Hearing officers may take the failure to so file into consideration in determining how to proceed on a case by case basis, considering the equities of the circumstances.

# § 304    PRE-HEARING MATTERS

A.    <u>PRE-HEARING CONFERENCES.</u>

    1.    <u>General Information about Pre-hearing Conferences</u>.  The purpose of a pre-hearing conference is to identify all ripe issues that are truly in dispute and that could benefit from a joinder of claims and remedies. Pre-hearing conferences are not mandatory, however, the Hearing Officer may order the conference or either party may request a conference. It permits the Hearing Officer to raise the issue of settlement or mediation if the circumstances suggest that exploration of this issue would be beneficial to the parties and not result in delaying resolution of the complaint. However, hearing officers shall not discuss the terms of settlement or mediate settlement discussions.  Conducting a pre-hearing conference also provides the Hearing Officer the opportunity to advise all parties how the hearing will be conducted. Establishing ground rules, which

15

remove surprise from the proceedings, will result in a more efficient and focused evidentiary hearing.

The Hearing Officer shall not offer advice to any of the parties and/or their representatives, however, a Hearing Officer shall advise pro se litigants that they have a right to counsel and where free legal services may be obtained. The pre-hearing conference must be held in the presence of all parties concerned (either telephonically or face-to-face). Discussion with either party separately could result in an *Ex Parte* relationship that would taint the impartiality of the process and violate the Judicial Code of Conduct. No delay in the hearing date should result from a pre-hearing conference absent the consent of both parties or an Order of the Hearing Officer.

The pre-hearing Order should contain a confirmation of matters addressed during the pre-hearing conference including: (1) a statement of the issues to be resolved at the hearing, (2) the time, date, place, and other physical arrangements for the hearing, and (3) clarification of any procedural points including pre-hearing deadlines, and other various responsibilities of the parties. The Order can also help avoid unnecessary issues arising at the hearing, such as (1) a party's failure to appear, (2) a party's failure to meet a pre-hearing deadline, (3) a party not being prepared to proceed with the provision of evidence, (4) a party seeking a last-minute continuance where good cause is not shown, and (5) confirming special requests. The Order does not have to be a verbatim recitation of everything discussed in the pre-hearing conference; its chief purpose is to set forth the matters either stipulated to by the parties or ordered by the Hearing Officer.

Unless otherwise agreed to by the parties, the hearing officer should transmit the Order to the parties for receipt by each of them within 3 business days after the pre-hearing conference or at least seven business days prior to the hearing, whichever is earlier. The Order shall be sent by fax whenever possible and otherwise by mail to the parties. The Hearing Officer must also provide a copy to the Student Hearing Office.

2.   Prior to a hearing, the hearing officer or a party may move for the setting of a pre-hearing conference. At the hearing officer's discretion, the parties shall be directed to appear, either in person or by telephone, at a specific time for a conference prior to a

16

hearing on the merits for the purposes of considering preliminary matters, including any of the following:

a.    Setting the date and amount of time for the hearing;

b.    The formulation or simplification of issues;

c.    Admission of certain assertions of fact or stipulations;

d.    The procedures at the hearing on the merits;

e.    To establish any limitation on the number of witnesses and the time to be allotted each party to present their case in chief;

f.    Consideration of any motions; and/or

g.    To discuss any other matter that may aid in simplifying the proceeding, disposing of any matter in controversy, up to and including settlement of the dispute.

3.    Motions for pre-hearing conferences.

a.    Motions by parties for a pre-hearing conference, unless by consent, shall be filed with the SHO and served on opposing parties (by facsimile whenever possible) no more than ten (10) calendar days after the Notice of Hearing is issued by the SHO.   All motions should include a proposed order. Consent motions for a pre-hearing conference shall be filed at least 20 days before the hearing date and include a proposed order.

b.    Any reply or opposition to a non-consent motion under 3.a shall be filed and served not later than 5 business days after receipt.

c.    Hearing officers shall rule on motions for a pre-hearing conference in sufficient time to allow the conference to be held and a pre-hearing Order issued within 3 business days after the pre-hearing conference or no later than 7 days before the hearing, whichever is earlier.

4.    In exercising discretion under this provision, hearing officers shall not unreasonably deny a request for a pre-hearing conference.

17

The pre-hearing conference is not to be used in lieu of a resolution session.

5.   To ensure implementation of this section, the SEA shall ensure that there are sufficient hearing officers to accommodate reasonable requests for pre-hearing conferences and that hearing officers are assigned to cases in a timely manner.

6.   Action taken at the pre-hearing conference shall be on the record.

7.   A written request to reschedule a pre-hearing conference must contain a statement that all parties have been consulted or the reason why all parties were not consulted and list any objection and shall set forth three alternate dates and times for rescheduling the conference. Unless consented to by the parties, continuances shall not be granted without a showing of good cause.

# § 400   DUE PROCESS HEARING

## § 400.1  Scheduling the Hearing

A.   If the LEA has not resolved the due process complaint to the satisfaction of the parents within thirty (30) days of the receipt of the due process complaint, the due process hearing must occur.

B.   The timeline for issuing a final hearing officer's determination begins at the expiration of  this 30-day period.  Pursuant to federal law, not later than 45 days after the expiration of the 30 day resolution period:

1.   A final hearing decision shall be issued by the hearing officer; and
2.   A copy of the decision shall be faxed when possible and otherwise is mailed to each of the parties.

C.   Exceptions:

1.   <u>Waiver of the 30-day resolution period</u>.   The parties may jointly waive the resolution session.  When the parties have jointly agreed to waive the Resolution Session, the due process hearing will be set for an expedited hearing, not later than 20 days following the date of the waiver.

18

2.   <u>OGC determination that settlement discussions not productive</u>.  If the resolution session was unsuccessful, as soon as the OGC determines that further settlement discussions would not be productive, the OGC is obligated to immediately notify the SHO to schedule the case for hearing.

D.   General Procedures

1.   The Student Hearing Office and the parties shall work reasonably in scheduling the case for a hearing.  The date and time of the due process hearing may be set during a pre-hearing scheduling conference at the discretion of the Impartial Hearing Officer assigned to preside over the case.  However, if the date of the hearing is not set during a pre-hearing scheduling conference, the following general guidelines shall apply:

a.   Upon notification that the due process complaint has not been resolved, (SHO will receive a Due Process Complaint Disposition Form), upon request by mutual agreement of the parties, or upon the expiration of the 30 day resolution period, whichever occurs first, the SHO Hearing Coordinator will schedule the matter for a due process hearing.

b.   The complaining party may indicate on the Due Process Complaint Form the estimated amount of time that will be needed for the hearing.  All hearings will be scheduled for two hours unless a party requests otherwise.  Unless the requesting party agrees to a modification of their request for a particular time allotment, only Hearing Officers may deny or modify a party's request to alter the time allotted for a hearing.  If the Student Hearing Office has good cause to believe the time request is unreasonable, the matter shall immediately be referred to the Chief Hearing Officer who shall convene a pre-hearing conference call with the parties' counsel within 3 business days for the purpose of scheduling the hearing and establishing the time allotment. Hearing Officers may deny or modify a party's request to alter the time only after allowing the requesting party an opportunity to be heard about the reason for the request, and may grant such request only after allowing the opposing party an opportunity to be heard.

19

  c.  The parent, or the parent's attorney if the parent is represented by legal counsel, will be contacted and requested to provide 3 available days for scheduling the hearing, and the amount of time needed for the hearing. At this time, the complaining party is required to notify the SHO if the case will require more than 2 hours for the hearing.

  d.  The SHO will make every effort to schedule the hearing on one of the requested dates if one of the dates is available. If one of the 3 (three) dates is available, a Notice of Hearing will be sent by fax to every party/counsel who has a fax and by mail to any party/counsel who does not have a fax.

  e.  If none of the 3 dates are available, and if a date and time has not otherwise been determined by a pre-hearing conference, SHO will propose the next available open hearing date and shall issue a Provisional Notice of Hearing to the parties.

  f.  If any party objects to the provisional hearing date selected by the Hearing Coordinator, and no other date is agreed to between the parties, the matter will be referred to an Impartial Hearing Officer for a telephone pre-hearing conference, and the hearing officer shall render a final decision on the date and time of the hearing. Oral requests for a continuance will be ruled upon during the teleconference.

2.  When the parties have jointly agreed to waive the Resolution Session, the due process hearing will be set for an expedited hearing, not later than 20 calendar days following the date of waiver. See § 1007 for the procedures that govern expedited hearings.

3.  Not less than 10 business days before the hearing, the SHO will notify the parties of the hearing officer assigned to the case. This does not preclude the substitution of another hearing officer after the notice of the assignment as a result of unexpected emergencies or other exceptional circumstances.

# § 401    MOTIONS

A.     A motion is a request that a Hearing Officer rule or make a decision on a particular issue prior to or during a hearing. Pre-hearing motions are normally heard by the presiding Hearing Officer, but may be heard by another Hearing Officer for expediency.

B.     The following are examples of issues that are appropriate for resolution through a pre-hearing motion:

1.     Whether good cause exists for continuance;
2.     The child's stay-put placement pending resolution of the dispute;
3.     Dismissal of a party or parties to the hearing;
4.     Recusal of the Hearing Officer;
5.     Clarification of the issues in dispute;
6.     Consolidation of multiple cases into one hearing.

C.     Procedures for Filing Motions:

1.     A party may obtain a ruling on a pre-hearing issue by submitting a motion in writing to the presiding Hearing Officer (with a copy to the Student Hearing Office).

2.     A copy of the motion must be simultaneously faxed when the party or counsel has a fax machine and otherwise mailed to all other parties.  A certificate of service must be attached to the motion verifying that all other parties, or, if represented, their attorney of record, have been served with a copy of the motion.  Failure to timely serve the motion to all other parties may result in denial of the motion or scheduling of a contested hearing on the motion at the discretion of the Hearing Officer.

3.     The party making the motion must set forth the specific facts supporting the motion and attach supporting affidavits, declarations or documents when appropriate.

4.     All motions must be filed no later than the 5-day deadline for disclosing evidence and witnesses.  Any motion filed after that date shall be considered untimely, and may be denied at the discretion of the Hearing Officer without further consideration.  This rule does not limit the Hearing Officer's discretion to grant a motion filed after the 5-day disclosure deadline upon a showing of good cause by the party for the late filing.

21

5.    Any party wishing to respond to or oppose the motion shall file and serve by fax or mail as specified in 2 above a written response no later than 3 business days from the date the motion is filed with the Student Hearing Office or with the Hearing Officer if one has been assigned.  Responses contesting facts shall so state and supply supporting affidavits, declarations or documents as appropriate. Failure to timely respond may be taken as concession of the motion.  Failure to timely serve the response motion to all other parties may result in granting of the motion or scheduling of a contested hearing on the motion at the discretion of the Hearing Officer.

6.    Requests that require an immediate ruling may be directed to the Chief Hearing Officer at any time prior to the appointment of the hearing officer who will be assigned to preside over the case, or at the pre-hearing conference. No motion shall be decided before the time periods specified above have passed. Hearing officers shall be cognizant of timelines when considering motions and shall decide motions so as not to delay hearings or necessitate requests for continuances.

7.    If the parties disagree as to the facts relating to the motion, and both parties have supported their positions with appropriate affidavits, declarations, or documents, if necessary, the Hearing Officer may convene a pre-hearing conference to receive sworn testimony related to the disputed facts, or delay ruling on the motion until the hearing convenes to allow the parties to provide evidence relating to the disputed facts. In ruling on disputed facts, the Hearing Officer will not rely solely on statements made by an attorney or advocate representing a party.

# § 402    CONTINUANCES

**It is the policy of the Student Hearing Office to render final hearing decisions within all stated federal and local rules.  Continuances often cause unreasonable delays in the resolution or development of an appropriate educational plan for the student.  The SHO discourages the use of continuances; the granting of an extension of time to render the final hearing decision is prohibited in the absence of good cause.**

A.    Continuance defined

22

1.    A continuance is a request by one or more of the parties that a scheduled hearing, pre-hearing conference, or other event be rescheduled to a later date, and may request an extension of time for issuance of the final hearing officer's determination be granted. A party may only request a continuance for "good cause." In determining whether good cause exists for a continuance, the Hearing Officer will consider the facts supporting the request for the continuance, prior rulings, and the legal mandate for prompt resolution of special education disputes. The Hearing Officer may require documentation prior to granting a continuance request and an extension of time to issue a final determination.

2.    Pursuant to the *Blackman/Jones* Consent Decree, there is a rebuttable presumption that good cause does not exist for a continuance sought by DCPS for any of the following reasons:

a.    Unavailability of DCPS witnesses or counsel, unless DCPS has made a diligent effort to have such persons appear;

b.    Hearing officer unavailability, unless SHO has made a diligent effort to have such persons appear;

c.    The SHO's or Hearing Officer's decision to allot a different amount of time from that requested by the parent;

d.    The SHO's failure to secure adequate physical space for the hearing, unless SHO made a diligent effort to schedule reasonable space under the circumstances known to them at the time of the hearing;

e.    SHO failure to transmit in a timely manner those notices and documents which it is responsible for distributing;

f.    Late arrival of the Hearing Officer of DCPS attorney to the scheduled hearing; or

g.    SHO failure to provide the necessary recording equipment to adequately capture the entire proceeding.

B.    Procedures for Requesting a Continuance:

1.    A request or motion for a continuance shall be submitted to the Student Hearing Office in writing.  Only hearing officers can grant a continuance of hearings that have already been set on the hearing docket.

2.    A copy of the request shall be provided simultaneously to all other parties by facsimile if the party or counsel has a facsimile.  If the other party does not have a facsimile the requesting party shall call

the other party or counsel and leave a voice mail message or leave a message with a responsible adult over the age of 18 and also mail a copy of the request. The requesting party shall make diligent efforts to confer with all other parties or counsel to seek agreement with the continuance. If the parties agree to a continuance, the agreed motion or request should be filed with the Student Hearing Office. In general, the parties' agreement to a continuance constitutes "good cause" to reschedule the hearing to another date and to extend the deadline for issuance of a final determination.

3.      A certificate of service must be attached to the request or motion verifying that all other parties have been served and/or notified as provided above. Unless good cause is shown, failure to provide timely notice of the motion to all other parties shall result in denial of the motion or scheduling of a hearing on the motion at the discretion of the hearing officer.

4.      Parties opposed to a continuance must submit a written objection to the continuance within 3 business days of the date the motion is filed with the Student Hearing Office and serve same or provide notice as provided for in 2 above.

5.      All requests or motions for a continuance shall be submitted and filed no later than the 5-day deadline set for disclosing witnesses and evidence. Any request or motion for a continuance made or filed after that date shall be considered untimely, and may be denied at the discretion of the Hearing Officer without further consideration. This does not prohibit the Hearing Officer from granting a continuance submitted or requested after the 5-day disclosure deadline upon a showing of good cause by the party for the late request.

a.      **Exception**. This rule imposing a deadline for filing a request or motion for a continuance does not apply to a request or motion that is based upon the unavailability of the student, the student's parent or guardian. Such requests or motions shall be considered timely filed even if filed after the disclosure deadline.

6.      The Chief Hearing Officer shall rule on all requests or motions for a continuance unless the case has already been assigned to another Hearing Officer.

24

7.    Until a ruling has been made on the continuance request, the parties should be prepared to proceed on the date and time for hearing indicated on the Notice of Hearing.

8.    A Hearing Officer must rule upon all continuance requests within 5 business days of the request or sooner, if practicable. To comply with this provision, the Hearing Officer must issue a written determination whether to grant or deny the continuance stating the basis for the decision, including whether good cause was found.  If the factual circumstances relating to the continuance are in dispute, the Hearing Officer may ask the parties to submit declarations, affidavits or other evidence, including witness testimony, which may be taken by telephone.

9.    When the Hearing Officer grants the request, the hearing shall be rescheduled and the 45-day time limit will be extended for the duration of the continuance.  The case must be reset to a date certain, with notice to all counsel and unrepresented parties, and the final hearing decision must be issued within the extended timelines.

10.    No more than one (1) continuance per side shall be granted in any case unless the Chief Hearing Officer grants another continuance based on exceptional circumstances.   All continuances shall be limited to ten (10) days, except by the agreement of the parties, or if the applicable Hearing Officer orders otherwise after review.

a.    **Continuance granted**.  The Hearing Officer shall issue an Order confirming that the continuance was granted and provide the parties with notice of the new hearing date. The order shall identify (1) the good cause grounds for granting the extension of time, and (2) the new date for the hearing. The extension of time for issuance of the final hearing determination will only be for the number of days covered by the extension.  No open-ended continuance requests will be granted or allowed unless good cause is shown or the parties agree.

b.    **Continuance denied**.  If the continuance request is denied, the hearing will proceed as scheduled and the original deadline for issuance of a final determination will apply.

11.    **Recessing a Hearing From Day to Day**.  If a hearing cannot be concluded within the time allotted for the hearing, and the case

25

needs to be recessed from day to day, the hearing will be reconvened as soon as reasonably possible, but in no event shall the case be recessed for more than ten (10) business days, except upon the mutual agreement of the parties, or upon the finding of good cause for a longer delay. The deadline for the issuance of the final hearing decision will be extended only for the duration of the recess period.

12. **No continuance for DCPS failure to attempt Resolution Session,** In the absence of agreement of the parties, if DCPS fails to make any attempt to schedule a Resolution Session within the statutory fifteen (15) days, DCPS shall not be granted a continuance of the due process hearing, except under exceptional circumstances. The failure to notice and conduct a Resolution Session shall not constitute an exceptional circumstance.

13. **Expedited Hearings**. No continuance shall be granted on any case set for an expedited hearing unless the party was not consulted regarding the date or the parties agree. Where parties have no counsel a hearing officer must determine if the pro se parent's assent is knowing and willing.

# § 500    PREPARING FOR THE HEARING

In preparing for a hearing, a party must not only determine what issues need to be addressed by the Hearing Officer but also arrange to provide evidence to support the party's position on those issues during the hearing.

A.    Five (5) Day Disclosure Rule.

1.    At least five business days prior to a scheduled due process hearing, each party must disclose and provide to all other parties and the Student Hearing Office copies of all evidence which the party intends to use at the hearing. This rule requires specific disclosure of:

a.    All documents and tangible things the party wants admitted into evidence for the Hearing Officer to consider;

b.    The names, addresses, and telephone numbers of all witnesses the party intends to call to testify during the hearing; and

26

c.    All evaluations completed by that date and recommendations based upon the offering party's evaluations that the party intends to use at the hearing.

2.    A party who does not receive adequate prior disclosure of evidence may ask the Hearing Officer to exclude the evidence from the hearing. It is within the discretion of the Hearing Officer to determine whether the evidence will be excluded.

# § 600    THE HEARING OFFICER

## § 600.1    Authority and Responsibilities

The Hearing Officer has the authority and responsibility to conduct the hearing with integrity and dignity; ensure the rights of all parties are protected; rule on procedural matters; take actions necessary to complete the hearing in an efficient and expeditious manner; to be fair and impartial, and to render a final independent administrative decision. The Hearing Officer has additional specific authority to:

1.    Administer oaths or affirmations and question a witness on the record.
2.    With the consent of all parties to the hearing, request that conflicting experts discuss an issue with each other while on the record.
3.    Visit the proposed placement site when the physical attributes of the site are at issue.
4.    Call a witness to testify at the hearing if all parties to the hearing consent to the witness giving testimony, or if the hearing is continued for at least five days prior to the witness testifying.
5.    Order that an impartial assessment of the child be conducted (the cost of which will be paid by the school system).
6.    Restrict the number of witnesses and limit the length of their testimony, provided such limitations do not prohibit a party from introducing relevant material and competent evidence.
7.    Ask questions of counsel and parties in order to fully develop an appropriate record.

Hearing Officers have discretion in managing a due process hearing.  Hearing Officers may have individualized procedures or rules concerning the handling of documents, exhibits, witnesses and the like.  Such preferences shall be expressed in writing and made available upon request by the Student Hearing Office, and posted with timely updates on the DCPS website.

## § 600.2    Qualifications of Hearing Officers

27

Impartial special education hearing officers are not employees of the DC Public Schools. They are private attorneys who have qualified to serve as hearing officers and who have executed a contract with the DC Public Schools for that purpose. The Student Hearing Office will assign impartial Hearing Officers to cases on a rotating basis. Hearing Officers are selected based on their academic achievement, background in special education and special education law, professional experience, writing ability, and personal qualities. All Hearing Officers are members in good standing of the District of Columbia Bar, have at least five years of active legal experience as an attorney, and have received special training in conducting administrative hearings. Hearing Officers also receive training in special education laws, regulations, procedures, and programs.

The Student Hearing Office shall also maintain a statement of the qualifications of each person who serves as a Hearing Officer and make it available to the public without charge or undue delay upon request.

To ensure impartiality, every Hearing Officer is held to the American Bar Association's Code of Judicial Conduct. Additionally, no Hearing Officer may be employed by DCPS or any agency or organization involved with the care or education of the child in the case, have any other professional or personal interest that would conflict with his or her objectivity in the hearing, or have a prior involvement with the child. A person who otherwise qualifies to conduct a hearing is not an employee of DCPS solely because he or she is paid by DCPS to serve as a Hearing Officer. Additionally, a Hearing Officer may not be employed by or represent schools or parents in any manner in any jurisdiction, nor be an employee of any parent rights or disability rights agency or organization. A Hearing Officer must decline an assignment or ask to be recused as soon as a conflict is known .

## § 600.3  Ex Parte Communications Prohibited

A Hearing Officer may not communicate with either party or counsel about substantive matters in the case without the knowledge and/or participation of the other party(ies) or counsel when the party is represented. This prohibition does not include communication regarding scheduling. If an unrepresented parent is uncertain about what matters may or may not be discussed, they may ask the Hearing Officer what is appropriate. Especially when a parent or student is not represented, a Hearing Officer shall, to the extent possible, without becoming an advocate, assist the unrepresented party in developing the record. Counsel seeking clarification from a Hearing Officer shall always involve the other party's/parties' counsel.

## § 600.4        Disqualification of Hearing Officer

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

The Student Hearing Office shall ensure that the Hearing Officer assigned to a particular hearing is fair and impartial. The Hearing Officer shall disqualify him/herself from presiding over any case in which the Hearing Officer has a personal or professional interest which might conflict with the Hearing Officer's objectivity in the hearing. If a Hearing Officer is recused, the Student Hearing Office shall appoint another Hearing Officer as a replacement.

A.  PROCEDURES FOR DISQUALIFYING A HEARING OFFICER

1.  Any party to a hearing may challenge the assignment of a particular Hearing Officer. If any party to the hearing objects to the assigned Hearing Officer based on conflict of interest, bias or other reason, the objection shall be presented to the Hearing Officer in writing not less than five (5) business days prior to the date of the hearing.

2.  If any party to the hearing objects to the participation of the assigned Hearing Officer for any reason except bias after the five-day disclosure, the Hearing Officer shall use discretion in determining whether to disqualify him/herself from the proceedings. The Hearing Officer assignment will be changed if the Hearing Officer agrees.

3.  The Hearing Officer shall issue a written ruling on any objection to their participation. The written objection of any party to the participation of the Hearing Officer and the subsequent written ruling by the Hearing Officer shall preserve the issue for appellate review.

4.  No objection to the participation of a Hearing Officer shall be raised for the first time at the hearing itself, unless the grounds for such objection first became known after the deadline for filing the request for recusal or at the time of the hearing.

5.  All requests for recusal based on allegations of bias shall be reviewed by the Director of the SHO or an impartial and independent person, designated by the Director of the SHO, who meets the qualifications required for a hearing officer outlined above.  In the event that the allegation of bias is substantiated, or upon a determination that it is in the best interests of the student and the parties, the Student Hearing Office shall assign a different Hearing Officer to the case within 2 business days.

# § 700        HELPFUL INFORMATION ABOUT ADMINISTRATIVE HEARINGS

## § 700.1        General Information

Hearings will normally be held during regular business hours.  Hearings may be scheduled outside regular business hours upon request. Hearings will not be scheduled on weekends or holidays without the consent of all parties. An impartial Hearing Officer assigned by the Student Hearing Office on a rotating basis will conduct the hearing.

## § 700.2  Purpose

The purpose of the hearing is to allow all parties to present evidence supporting their positions and to explain to the Hearing Officer why they believe they should prevail on the issues in the hearing.

## § 700.3  Failure to Appear

If the party who requested the hearing (complainant) does not appear at the hearing, the hearing may be dismissed by the Hearing Officer. If the party who did not request the hearing (respondent) does not attend the hearing, the hearing may proceed without that party and a decision will be rendered based upon the evidence presented during the hearing. If for some unexpected reason, a Hearing Officer is absent from a scheduled hearing, the Student Hearing Office will expedite a rescheduling by either rescheduling the hearing for the next available date or assigning another Hearing Officer who can hear the case sooner than the next available date.

## § 700.4  Conducting the Hearing

The hearing is not governed by formal rules of procedure or evidence.  The Hearing Officer will attempt to ensure that all parties have an adequate opportunity to present their cases. Although less formal than a court trial, the hearing will proceed in an orderly fashion.  Timeliness is important.  Unjustified delays that prevent hearings from starting on time should be avoided.  Hearing Officers may take such delays into consideration in determining how to proceed on a case by case basis, considering the equities of the circumstances.

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

At the beginning of the hearing, the Hearing Officer turns on a recorder to make a record of the hearing and, after identifying the case and the parties for the record, briefly explains how the hearing will proceed. The Hearing Officer then usually clarifies the issues to be decided by discussing the case with the parties (and reviews the pre-hearing conference stipulations). If the recorder malfunctions during the hearing, the proceedings must be stopped and an attempt made to remedy the situation. If the problem cannot be solved, the hearing must be continued until such time when proper recording equipment is available. The Student Hearing Office shall ensure that all equipment is in good working order.

The Hearing Officer will ask the parties whether they have discussed settlement of the case.  At the parties' request, the Hearing Officer will provide the parties an opportunity to discuss settlement off the record or to request a mediator, if desired. The Hearing Officer will ask whether there are preliminary issues, then will rule on accepting into evidence the documents that the parties have presented. The Hearing officer will determine the order in which the witnesses will be presented.

Once preliminary matters are completed, the parties are generally given an opportunity to make opening statements. Opening statements should provide the Hearing Officer with a brief summary of the parties' positions on the issues for hearing. Following opening statements, the party presenting first will call its witnesses. Oral evidence may be taken only after oath or affirmation and may be provided via telephone. In cases where oral evidence is provided via telephone, the hearing officer shall use appropriate measures to ensure that the circumstance for the taking of that testimony are fair, appropriate, and designed to ensure accuracy and credibility.  For example, a hearing officer may ask a witness testifying by telephone to state on the record, under oath, whether anyone else is present in the room from which he or she is giving testimony by telephone and if so, allow the other party to object.

After one party has presented its witnesses and other evidence, the other party(ies) will call its (their) witnesses. Each party will be given an opportunity to ask questions of the other parties' witnesses, and the Hearing Officer may also ask questions of the witnesses.  The length of the due process hearing can vary, but the hearing officer shall run the hearing efficiently.

At the end of the hearing, each party is allowed to make a closing statement. The Hearing Officer may ask the parties to make oral closing statements, or if necessary because of the complexity of the issues, submit them in writing after the hearing. The Hearing Officer may also continue the hearing to request written briefs on particular legal issues and schedule additional oral argument, if necessary. No request for written closing statements or briefs shall be grounds for extending the timeline for issuing a hearing decision without the express consent of the parties/counsel. After closing statements are presented, the hearing record is closed. The Hearing Officer then has up

to 10 days to prepare a written decision, unless a decision is due sooner, which will be provided to the Student Hearing Office for distribution to all parties.

# § 700.5  Burden of Proof

As of June 30, 2006,  DCPS Board of Education policy regarding the burden of proof was amended (53 DCR 5249 (June 30, 2006)).  The revised rule shall apply to all hearing requests filed on or after Monday July 3, 2006.

# § 800          RIGHTS

# § 800.1  Rights of All Parties

All parties have the following rights:

1.    Right to representation. All parties have the right to be represented by legal counsel, and to be accompanied and assisted by persons with special knowledge or training related to the problems of disabled children.

2.    Right to present evidence and argument. All parties have the right to call witnesses and present written and other evidence that will help them prove their cases. The will also be given the opportunity to argue the merits of their cases.

3.    Right to confront and cross-examine adverse witnesses. All parties have the right to be present when witnesses testify against their positions and to ask them questions concerning their views.

4.    Right to compel the presence of witnesses. It is the responsibility of the party seeking relief to secure the presence of their witnesses for due process hearings by serving the witness with a Notice to Appear or other form of notification.  Only if a relevant witness refuses to appear at the hearing voluntarily, the party requesting the witness has the right to request the hearing officer to issue a "Notice to Appear" to the requested party.  Any Notice to Appear shall be issued by the Chief Hearing Officer and shall be served by the party requesting the Notice.

Procedures:

a.    The party should complete and file a Notice to Appear no later than fourteen (14) calendar days prior to the date of the scheduled

hearing.   A copy of the Notice must be served on all counsel of record.

b.    The Notice to Appear must specifically identify the witness or witnesses who are the subjects of the Notice, and must state the relevance of the requested testimony to the pending case.

c.    The Notice to Appear shall be signed and issued by the Chief Hearing Officer within two (2) business days.  [A]ny opposing party has a right to request that the hearing officer withdraw or quash the Notice to Appear.

d.    Service.  It is the responsibility of the requesting party to serve the Notice to Appear.   The Notice to Appear must be served by delivering a copy to the witness by certified mail, fax transmission, or hand delivery.   If the witness is a party, or an employee of a party, the Notice to Appear shall be served on the witness' attorney of record.

e.    Proof of Service.   Proof of service must be made by filing a statement by the person who made the service stating the date, time, and manner of service, and the name of the person served.

5.    Right to a record of the hearing. The Hearing Officer shall make an electronic record of the hearing. The Student Hearing Office shall maintain the electronic record at all times, including during recesses to new dates, and make it available for review by any party upon request. The parties have a right to a written or electronic copy of the electronic recording at no cost. A copy of the electronic recording will be provided within 5 (five) business days of the request. A transcript will be provided within 30 (thirty) calendar days of the request.

6.    Right to written finding of fact and decision. The Hearing Officer must prepare a written decision setting forth his or her findings of fact, analysis of the law, and final order. Copies of the decision will be provided to the parties by the Student Hearing Office.

7.    Right to prohibit the introduction of surprise evidence. The Hearing Officer may prohibit the introduction of any evidence at the hearing that has not been disclosed to all parties at least five (5) business days before the hearing.  This includes all evaluations and recommendations based upon those evaluations that the party intends to use at the hearing

8.      Right to request the exclusion of witnesses. A party may ask the Hearing Officer to order the prospective witnesses to remain outside the hearing room while other witnesses are testifying. The hearing officer shall have the discretion to rule on a motion by either party to allow expert witnesses, who offer opinion testimony (based on their understanding of the facts) to remain in the hearing room while other witnesses are testifying.  A party making such a motion shall support it with reference to legal authority and the facts of the particular case.

9.      Right to an interpreter. If the primary language of a party is other than English, an interpreter will be provided by the Student Hearing Office without charge. It is important that the parties notify the Student Hearing Office at least 10 days before the hearing when an interpreter is needed. In such circumstances, the party whose primary language is other than English shall also have a right to have their own interpreter present for confidential communications with their counsel.  Neither DCPS nor the Student Hearing Office shall be required to pay for this interpreter. When an interpreter is present, the hearing officer will allow time for a verbatim oral interpretation of all statements and all testimony at the hearing, stopping every two to three sentences to allow for such interpretation. The Student Hearing Office, all parties and the Hearing Officer shall plan for the hearing with the recognition that this process requires approximately twice the amount of time that would otherwise be needed for the hearing

# § 800.2  Special Rights of Parents

The law also provides the following special rights of parents in addition to the rights set out above:

1.      Right to examine pupil records. Parents have the right to examine all records maintained by the school that are related to their child. Parents should call or write their individual LEA or school(s) to request access to pupil records. Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records.

2.      Right to a public hearing. Parents have the right to elect to have a hearing closed to the public or to allow members of the public to attend the hearing.

3.      Right to have the child present at the hearing. Parents have the right to have the child involved in the dispute present at the hearing.

34

4.    Right to a written verbatim transcript of the hearing. If a parent wishes to have an electronic copy or written verbatim transcript of the hearing, the parent or parent's counsel should submit a request in writing to the Student Hearing Office. There is no cost to the parent(s) or their counsel.

# § 900        PRACTICE OF LAW

All attorneys and other persons who appear for the purpose of providing legal representation on behalf of a party must be licensed and in good standing to practice law in the District of Columbia. This provision is not intended to exclude law students who are working under the appropriate supervision of a licensed attorney.

# § 1000        ATTORNEYS AND ATTORNEYS FEES

All parties have the right to be represented at all stages of the hearing process by an attorney of their choosing. This does not mean that DCPS must pay for the parent's attorney. Parents may be entitled to have costs of attorney's fees reimbursed if they prevail as a consequence of initiating a due process hearing. A court of competent jurisdiction, in its discretion, may award reasonable attorney's fees to the parent(s) of a child who is the prevailing party. The Student Hearing Office will provide all parties, if requested, with a list of local persons and organizations that can provide free or low cost representation, and this list shall be posted on the DCPS website and updated regularly.  No referral to any public or private attorney, law firm, or legal service provider shall constitute an endorsement, representation, warranty, or guarantee by DCPS, the government of the District of Columbia, or the Student Hearing Office about the quality of the legal work or services provided by the attorney, law firm, or legal service provider.

# § 1001        EVIDENCE

Evidence is anything that helps a party prove a fact that is necessary for that party to prevail in the hearing. Common forms of evidence include testimony of witnesses, including the parent's own testimony, and documents. Often, many documents in the child's educational record are put into evidence.

All witnesses must give testimony under oath if their testimony is to be used as evidence in the hearing. The Hearing Officer will give the affirmation or oath whether the matter is being heard by telephone or in person during a hearing. When there is a dispute as to what the facts are, the parties will need to present evidence or witnesses who have direct knowledge of the facts.

To enter documents into evidence, the party must present documents to the Hearing Officer and ask that they be put into evidence. Normally this is done at the beginning of the hearing. As indicated above, all parties must provide copies of the documents they wish to offer as evidence to the other party(ies) at least five business days prior to the hearing.

Documentary evidence is often cumbersome, and dealing with it in the hearing can be confusing and time-consuming. To avoid this problem, each party should logically organize its own documents. All parties should also bring an extra copy of their evidence in a folder for use by witnesses.

Parties wishing to call witnesses should request their presence by contacting him or her to come to the hearing voluntarily. Parents wishing to call a witness who is an employee of the LEA should follow the procedures in § 800.1.4.

# § 1002     OUTCOMES

## § 1002.1     Settlement

It is the policy of the DC Public Schools to encourage resolution of disputes in special education through negotiation and other alternative dispute devices.   The resolution process and mediation may prevent future costs to all participants by establishing a partnership between parents and educators, thereby protecting the cooperative relationship between them. Together, the parent(s) and the school system may reach an agreement, thus eliminating the need for a due process hearing or any other resolution action. The Hearing Officer has authority to dismiss a hearing when informed by the parties that the case has been settled (other than those that have been formally mediated), and may, if requested, incorporate the terms of an agreement into an Order with consent of both parties. Settlement negotiations are confidential and details of such shall not be brought to the attention of the Hearing Officer if the hearing goes forward.

## § 1002.2     Dismissal

The Hearing Officer shall dismiss the case if he/she determines that a hearing has been initiated for reasons other than those under the Hearing Officer's jurisdiction

36

or authority to resolve under IDEA. The Hearing Officer will have a maximum of 10 days from the date of the hearing to issue an Order of Dismissal, noting the reason for dismissal of the hearing.

# § 1002.3      Withdrawal

If the party requesting the hearing decides it does not want to proceed to hearing, that party shall inform the Student Hearing Office and the other party(ies) in writing of the decision to withdraw at the earliest opportunity. If the party requesting the hearing wishes to withdraw the case after the hearing has begun and testimony has been heard, the party shall make a motion to the presiding Hearing Officer.  It is within the discretion of the Hearing Officer whether to grant the withdrawal with or without prejudice.

# § 1003   THE HEARING OFFICER'S DETERMINATION

The final decision of the Hearing Officer in the case is formalized in a document referred to as the Hearing Officer's Determination (HOD).  The decision must include the identity of the parties, the final determination, and appeal rights. The Hearing Officer's Determination must also include findings of fact and conclusions of law; identify who prevailed on what issue; and specify what the school system, the parent(s), and the child are expected to do to carry out the decision.

The decision of the Hearing Officer shall be based solely upon the oral and written evidence presented at the hearing and any other additional written documents requested by the Hearing Officer prior to closing arguments.

Except as provided in this Standard Operating Procedures Manual or in the *Blackman/Jones* Consent Decree, the final decision must be signed, dated, and issued within 10 days following the hearing and no more than seventy-five (75) days following the request for hearing (subject to any extensions requested by a party and granted by the Hearing Officer).  A final decision must be in writing and must include findings of fact and conclusions of law separately stated.  Findings of fact must be based solely on the evidence presented at the hearing.  The Hearing Officer may at his or her discretion render his or her decision orally at the conclusion of the hearing, to be followed by the written final decision.  The Hearing Officer's final decision is considered "issued" on the date that the Student Hearing Office transmits the decision of the Hearing Officer to the parties by Certified Mail/Return Receipt Requested, in person, or by facsimile. All final decisions received from the Hearing Officer and arriving in the Student Hearing Office prior to 3:00 p.m. on a regular business day will be transmitted to the parties that day; all final decisions received after 3:00 p.m. on a regular business day will be transmitted the next business day.

The Student Hearing Office will transmit the Hearing Officer's Determination to all parties as near-simultaneously as possible and will not disclose the content of any Hearing Officer's Determination to any party prior to the dissemination of the decision to all parties. Specifically, the Student Hearing Office will distribute a copy of the Hearing Officer's Determination to: (1) the Superintendent or Director of the LEA or their representative, (2) the child's parent or representative, and (3) the student (if greater than 18 years of age). The Student Hearing Office and the Hearing Officer will retain a copy of the final decision and maintain a record of the transmittal (fax confirmation, signature of personal delivery, and/or certified mail receipt). After deleting personally identifiable information from the Hearing Officer's Determination, the Student Hearing Office shall make the findings and decisions available to the public by publication or at a reasonable cost and within 30 days of issuance.

# § 1004    FINAL DECISION AND RIGHT OF APPEAL

The decision issued by the Hearing Officer is final, except that any party aggrieved by the findings and decision of the Hearing Officer shall have 90 days from the date of the decision of the hearing officer to file a civil action with respect to the issues presented at the due process hearing in a district court of the United States or a District of Columbia court of competent jurisdiction, as provided in 20 U.S.C. § 1415(i)(2).

# § 1005    RECONSIDERATION OF HEARING DECISION

Reconsideration of a hearing decision may be granted on the timely filing of a motion for reconsideration.

Any motion for reconsideration must be filed within ten (10) days of the date of the Order is issued. The hearing officer shall afford the opposing party or parties an opportunity to respond prior to granting the motion. No response to a motion for reconsideration is required unless ordered by the Hearing Officer, which order shall specify the deadline for filing of a response.

Unless otherwise ordered by the hearing officer, the filing of a motion for reconsideration shall not stay the effectiveness of the order. The filing of a motion for reconsideration on a final order, if such motion is timely filed, the order shall not be deemed final for purposes of judicial review until the motion is ruled upon by the Hearing Officer or is denied by operation of law.

A motion for reconsideration shall be deemed denied by operation of law if the Hearing Officer has not ruled upon the motion within thirty (30) days of the date that the motion is filed with the Student Hearing Office.

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

If a motion for reconsideration is granted, the Hearing Officer may reopen the record in the matter, amend the findings of fact and conclusions of law, correct errors or mistakes, or make new findings of fact, conclusions of law, and issue a new order.

# § 1006   HEARING RECORD AND TRANSCRIPTS

After the hearing and all other legal proceedings have been completed, the Hearing Officer shall deliver all documents (which constitute the complete record of the due process hearing) to the Student Hearing Office.  The following items shall constitute the hearing record:

a. All documents and tangible things submitted to the Hearing Officer during the hearing, whether or not formally admitted into evidence, along with an index of exhibits admitted;
b. All correspondence and pleadings filed with the Student Hearing Office (exhibits, letters, pleadings, files or orders); and
c. All Interim Orders and the Hearing Officer's Determinations.

In addition, the Student Hearing Office and/or the Hearing Officer shall complete a "Certification of Record" to certify that the above listed documents itemize the entire record. The original Certification of Record will be provided to and retained by the Student Hearing Office along with the record.

# § 1007   REQUESTING A TRANSCRIPT

Unless a court reporter is used, the Hearing Officer will make an electronic record of the hearing which will be maintained by the Student Hearing Office. Any party to the hearing may request a copy of the hearing audio tape or a verbatim written transcript of the hearing by submitting a request in writing to the Student Hearing Office. The parent has a right to a written or electronic copy of the record at no cost to the parent. A copy of the audio tape of the hearing will be provided within 5 business days of the request.

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

# § 1008 EXPEDITED DUE PROCESS HEARING

(A.)    Special Rule for Expedited Due Process Hearings

A due process complaint involving a request for an expedited hearing shall be governed by the same rules as are applicable to due process hearings generally. Special education law authorizes certain issues be heard in an expedited time frame. Expedited hearings generally are required when the dispute is related to discipline, including a proposal to expel a student.

(1.)    An expedited hearing must occur within twenty (20) days after the hearing is requested, and will result in a determination within ten (10) days after the hearing.

(2.)    Resolution Meeting. When an expedited hearing is requested, a resolution meeting must occur within ten (10) days of the date the hearing is requested, and the hearing must proceed unless the matter has been resolved to the satisfaction of both parties within fifteen (15) days of the receipt of the request for an expedited hearing.

(3.)    Each party must disclose its list of prospective witnesses and documents as specifically described in Rule 305 described in Rule 305 no later than three (3) business days before the date of the hearing.

(4.)    No continuances will be granted for expedited hearings unless the party was not consulted regarding the date or the parties agree. Where parties have no counsel a hearing officer must determine if the pro se parent's assent to the continuance is knowing and willing.

# Section IV
# CONCLUSION

It is the intent of the District of Columbia Public Schools, State Enforcement & Investigation Division for Special Education Programs representing the State Education Agency (SEA) in the execution of IDEA, to resolve all disputes related to special education in as efficient and cooperative a manner as possible. DCPS also encourages the use of mediation processes and other less formal dispute resolution options to the maximum extent possible when a parent is dissatisfied with a decision, or lack thereof, regarding identification, evaluation, the educational placement of a child, or the

provisions of free appropriate public education. Any suggestions for improving this handbook should be forwarded to the Student Hearing Office.

41

# APPENDIX

*State Educational Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*

42



# *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, non-public day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office.  If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u>  Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting.  You will be contacted by a representative of the Local Educational Agency to schedule the meeting.  **The Student Hearing Office does NOT schedule resolution sessions**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

- Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP.  You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost.  The SOP is also at the DCPS website.

## A.    <u>INFORMATION ABOUT THE STUDENT:</u>

Student Name: _____     Birth Date: _____

Address: _____

Home School:    _____

Present School of Attendance: _____

43

Is this a charter school? _____    (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: _____

Address (if different from the student's above): _____

Phone/Contact Number: _____ Fax Number (if applicable): _____

## B.    Individual Making the Complaint/Request for Due Process Hearing:

Name: _____

Complete Address: _____

_____

Phone:  (h) _____  (w) _____  (Fax) _____  (e-mail) _____

Relationship to the Student:

☐     Parent              ☐     Legal Guardian          ☐     Parent Surrogate
☐     Self/Student        ☐     Local Education Agency (LEA)   ☐     Parent Advocate

## C.    Legal Representative/Attorney (if applicable):

Name: _____

Address: _____

_____

Phone: (w) _____  (Fax) _____  (e-mail) _____

Will attorney / legal representative attend the resolution session?        ☐ Yes          ☐ No

## D.    Complaint Made Against (check all that apply):

☐ DCPS school (name of the school if different from page one)_____
☐ Charter school (name of the charter school if different from page one)_____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

## E.    Resolution Session Between Parent and LEA:

I understand that it is my right to have a resolution session to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution session to avoid having this meeting.)

44

☐ I wish to waive the Resolution Session.

## F.    **Mediation Process:**

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session.  Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint.  Please check all that apply:

☐        I am requesting mediation as an alternative to the resolution session meeting.

☐        I am requesting mediation services **only**.

☐        I do not wish to use a mediator at this time.

## G.    **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions.  Provide complete details about all the facts supporting your claims.  (You may attach additional pages if needed):

1.        What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

2.        To the extent known to you at this time, how can this problem be resolved?

3.        Issues presented:

## H.    **Estimated amount of time needed for the hearing**: _____

45

Note:    In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed.

## I.    <u>Accommodations and Assistance Needed</u>:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other_____

## J.    <u>Waiver of Procedural Safeguards (Optional)</u>:

☐  I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.  I understand that waiver of this right is optional and not a requirement for filing this Complaint.

## K.    <u>Requirement to Consider Compensatory Education</u>:

**If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.**

## L.    <u>Parent or Local Educational Agency Signature and Affirmation</u>:

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                    Date

_____
Signature of Representative of the Local Educational Agency  Date
(if hearing requested by a LEA)

## M.    <u>Signature of Attorney/ Legal Representative</u>:

_____
Legal Representative / Advocate                    Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs  (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**

46

**Fax number: 202/442-5556**

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the matter of: | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| _____ | § | |
| *Petitioner* | § | |
| | § | HEARING OFFICER |
| vs. | § | |
| | § | |
| _____ | § | |
| *Respondent* | § | DC PUBLIC SCHOOLS |

## <u>NOTICE TO APPEAR</u>

To:    _____

    This is to notify you that you are required to appear and under oath to give testimony as a witness at the Special Education Due Process Hearing in the above styled cause.  The hearing is scheduled for:

**Date:**    _____

**Time:**    _____

**Place:**    Special Education Student Hearing Office
825 North Capitol St., NE
8th Floor
Washington, DC  20002

    This Notice to Appear is issued under the authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(h)(2), 5 D.C.M.R. § 3031.1(b), and § 800.1(4), Student Hearing Office Standard Operating Procedures.  Any party to a special education administrative hearing has the right to present evidence and compel the attendance of witnesses who have knowledge of relevant facts or whose opinions are important for reaching an appropriate disposition on the merits of this case.

    The exact time of your testimony cannot be determined prior to the date of the hearing.  Under the hearing rules please be advised that you might be excluded from the hearing room prior to your testimony.  You are welcome to bring reading material or such other activities as you may need to pass the time while waiting.

Your appearance has been requested by:

Name:    _____

Address    _____

          _____

          _____

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

Phone: _____

Signed this _____ day of _____, 2006.


_____
ATTORNEY

_____
SPECIAL EDUCATION HEARING OFFICER


## **PROOF OF SERVICE**

This will certify that a true and correct copy of this Notice to Appear was served on:


Name of witness: _____

Date: _____

Time: _____

Manner of Service:

_____ Certified mail, return receipt requested

_____ Fax transmission

_____ Hand delivery


By: _____
(Person executing service)


Date: _____


48