IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.A., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>　　　　Defendants. | C.A. No. 08-CV-0580 (RJL) |

## ERRATA PLEADING

　　Earlier today, on July 23, 2008, plaintiffs filed their Motion for Summary Judgment with the Memorandum in Support of Motion for Summary Judgment, Proposed Order, and Exhibit. Plaintiffs inadvertently left out the Statement of Material Facts To Which There is No Issue. Plaintiffs now file the Statement of Material Facts To Which There is No Issue and ask that it be included with the previously filed Motion for Summary Judgment.

　　Thank you.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ (filed electronically)
　　　　　　　　　　　　　　　　　　Michael J. Eig　　　#912733
　　　　　　　　　　　　　　　　　　Matthew B. Bogin　　#911552
　　　　　　　　　　　　　　　　　　Paula A. Rosenstock　#494580
　　　　　　　　　　　　　　　　　　Patricia F. Cyr　　　#490755

　　　　　　　　　　　　　　　　　　MICHAEL J. EIG AND ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　5454 Wisconsin Avenue, Suite 760
　　　　　　　　　　　　　　　　　　Chevy Chase, Maryland 20815
　　　　　　　　　　　　　　　　　　(301) 657-1740

　　　　　　　　　　　　　　　　　　Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.A., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | C.A. No. 08-CV-0580 (RJL) |

**STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7.1(h), plaintiffs submit this statement of material facts as to which there is no genuine issue.

1. J.A. was born on July 29, 2003. Administrative Record at 4; Tr. at 3.[1] DCPS found him eligible for special education and related services under the IDEA, as a student with a developmental delay.

2. J.A.'s developmental delays are primarily in the areas of expressive and pragmatic language, sensory processing, and motor skills. J.A. also has limited social and adaptive skills. As a result of these disabilities, he requires a small, full-time special education program with integrated related services. Administrative Record at 156.[2]

3. As a result of a screening at J.A.'s daycare facility in August, 2006, his parents, Carl Andersen and Alyson Steele, brought him to Children's National Medical Center

---

[1] Citations to the transcript of the Administrative Due Process Hearing, conducted on December 20, 2007, appear as "Tr. at __."

[2] Citations to the Administrative Record, which was submitted to the Court on July 11, 2008, will appear as Admin. Rec. at __.

("Children's") for a developmental evaluation. Admin. Rec. at 25-28. He also underwent a Speech/Language Evaluation at the George Washington University Medical Center. Admin. Rec. at 29-31. The results of the evaluations revealed that J.A. had developmental delays.

4. At the recommendation of Children's, the parents contacted the DCPS Central Assessment Referral and Evaluation ("C.A.R.E.") Center to begin the process of determining J.A.'s special education eligibility. DCPS conducted several of its own assessments and observations in November and December of 2006. Admin. Rec. at 32-50.

5. After reviewing both the parents' evaluations and its own, DCPS held an IEP meeting and concluded that J.A. was eligible to receive special education services as a student with a developmental delay.

6. DCPS developed an IEP which called for 24.5 hours per week of specialized instruction in an inclusion setting at West Elementary School, with one-and-a-half hours per week each of Speech/Language and Occupational Therapy. Admin. Rec. at 4, 51. The IEP specified that J.A.'s progress was to be tracked on a monthly basis and identified ten separate goals, and multiple corresponding short-term objectives, each of which required, at a minimum, documented observations. Admin. Rec. at 53-62.

7. While at West, J.A. failed to make significant progress. Specifically, his behaviors worsened, he regressed academically, and he experienced sensory overload due to the large and noisy classroom setting. Admin. Rec. at 89-99, 127.

8. The parents contacted Stephanie Owens, an educational specialist, and asked her to observe J.A. and make recommendations about his special education needs. Ms. Owens conducted two observations of J.A. at West in May, 2007. Admin. Rec. at 89-99. She concluded that he required full-time special education with a low student-to-teacher ratio and integrated

services throughout the day.  Ms. Owens also made significant recommendations for the related services J.A. should receive, including Speech/Language therapy, Occupational Therapy, and social/emotional counseling.  Admin. Rec. at 93.

9. J.A. completed the school year at West in June, 2007.  On April 18, 2007, the IEP team held a meeting to review J.A.'s IEP and progress.  JA-12.  The team did not make any changes to the IEP and the IEP notes only reflect a general discussion of services at West.

10. On June 12, 2007, an IEP meeting was convened at the C.A.R.E. Center to review J.A.'s progress from the school year, revise his IEP, and determine an appropriate placement for the 2007-2008 school year.

11. Present at the meeting were the parents, Stephanie Owens, C.A.R.E. Center supervisor Zondra Johnson,  and C.A.R.E. Center program specialist JoAnn Lowery.

12. Recognizing that the individuals present at the meeting did not constitute a proper IEP team, Ms. Owens requested that the meeting be rescheduled so that J.A.'s teachers and related service providers could be present to discuss his progress.

13. DCPS had failed to provide any documentation of J.A.'s progress (or lack thereof) for the team's consideration, as required by his IEP.  Ms. Owens requested that DCPS provide the parents with progress reports from J.A.'s teachers, prior to the next meeting.

14. Ms. Johnson acknowledged that the teachers were in error for failing to document J.A.'s progress as required by his IEP and that his placement could not be determined until the progress reports were received, and his IEP was revised.  Admin. Rec. at 113.

15. On August 15, 2007 the IEP team reconvened.  However, despite the parents' previous requests, DCPS still failed to provide the parents and Ms. Owens with sufficient information regarding J.A.'s progress prior to the meeting.  DCPS did provide the parents with a

progress report that was vague and failed to identify any measurable data regarding J.A.'s progress.

16. In addition, once again, and despite the request of the parents at the prior meeting, DCPS failed to have a complete IEP team present. Specifically, DCPS failed to include J.A.'s teacher (or any representative from West), a general educator, an Occupational Therapist, and a school psychologist or social worker.

17. This meeting was a continuation of the June IEP meeting; its purpose was to review J.A.'s progress and revise his IEP. Admin. Rec. at 127-128. However, despite the limited data that J.A. had failed to meet nearly all of his IEP goals, the team determined that his IEP was appropriate, and failed to make a single change to the document. *Id.*

18. Then, despite the lack of progress reports, updated IEP, or a complete IEP team, and without any input from the parents, the DCPS team members issued a change of placement for J.A. from West to Anne Beers Elementary School. The team issued a Prior Notice for Anne Beers – a noncategorical, self-contained preschool program which DCPS had just created for the upcoming school year. Admin. Rec. at 126; Tr. at 167, 180.

19. The change of placement was not discussed at the meeting and little to no information about Anne Beers was offered for the parents' consideration.

20. J.A.'s father objected to the IEP team issuing a placement decision without appropriate data to create an IEP, a position the MDT itself shared at the June meeting. Mr. Andersen formally gave the team notice that he intended to remove J.A. from public school and to enroll him at a private school at public expense. Complaint ¶ 20; Admin. Rec. at 127.

21. J.A. attended Jenny Waelder Hall for the 2007-08 school year, where he made significant educational progress.

22. The parents filed a due process hearing request on November 1, 2007, appealing the decision of the IEP team. Admin. Rec. at 4; Complaint ¶ 25. As a remedy for the school system's failure to propose an appropriate program or placement for J.A., the parents sought a half-day placement at Jenny Waelder Hall, Speech/Language and Occupational Therapy, psychological services, and transportation. Admin. Rec. at 21-24.

23. DCPS convened a mandatory Dispute Resolution Session on November 13, 2007, which was unsuccessful. Complaint ¶ 27.

24. The hearing took place before Hearing Officer Will Purcell on December 20, 2007, and the decision was issued on January 3, 2008. Admin. Rec. at 3, 6; Complaint ¶ 28, 32.

25. At the hearing, both parties presented evidence as to whether DCPS denied J.A. a free appropriate public education. Complaint ¶ 28.

26. The parents presented testimony from Stephanie Owens, who was admitted as an expert in special education. She was present at both IEP meetings and conducted observations of J.A. at West and Jenny Waelder Hall. Ms. Owens also observed the proposed placement at Anne Beers.

27. The parents also offered testimony from Dr. Griffin Doyle, a psychologist who worked with J.A. twice a week at Jenny Waelder Hall, who discussed J.A.'s unique educational needs.

28. Both of J.A.'s parents also testified regarding the IEP process, the proposed placement at Anne Beers, and the failures of DCPS to provide J.A. with an appropriate IEP and placement.

29. DCPS presented testimony from Zondra Johnson, a supervisor at the C.A.R.E. Center, and Rhoda Matthews, a special education coordinator at Anne Beers. Ms. Johnson was

only familiar with J.A. from participating in his IEP meetings and conducting an observation of him while he attended West. Ms. Matthews had no direct or personal knowledge of J.A. Tr. at 152-153, 120.

30. In his Decision, the Hearing Officer concluded that the parents failed to meet their burden to establish that J.A.'s IEP and placement at Anne Beers were inappropriate. Complaint ¶ 32.

31. The Hearing Officer failed to articulate any substantive reasons for his conclusions, and offered no analysis or discussion about the witnesses or the evidence presented at the hearing.

32. In a two-and-a-half page decision, he briefly and selectively summarized some of the facts. Admin. Rec. at 3-7.

33. The Hearing Officer provided four vague combined findings of fact and conclusions of law. Admin. Rec. at 5.

34. In his finding regarding the appropriateness of the DCPS proposal, he afforded complete deference to the DCPS officials, while failing to cite to any specific testimony or evidence. Admin. Rec. at 3-7.

           Respectfully submitted,

           _/s/ (filed electronically)_
           Michael J. Eig  #912733
           Matthew B. Bogin #911552
           Paula A. Rosenstock #494580
           Patricia F. Cyr  #490755

           MICHAEL J. EIG AND ASSOCIATES, P.C.
           5454 Wisconsin Avenue, Suite 760
           Chevy Chase, Maryland 20815
           (301) 657-1740

           Counsel for Plaintiffs