UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| CARL ANDERSEN AND ALYSON STEELE, parents and next friends of J.A., a minor, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 08-0580 (RJL) ) |
| DISTRICT OF COLUMBIA, *et al.,* | ) ) |
| Defendants. | ) ) ) |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

   Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, the Defendants here move for

summary judgment in this matter, and also oppose Plaintiffs' July 23, 2008, Motion for

Summary Judgment ("Pl. Mot."). As shown in the accompanying memorandum of points

and authorities, Plaintiffs' challenge to the administrative hearing officer's determination

("HOD") in this case lacks merit, and the HOD should be upheld by this Court. A

statement of material facts as to which there is no genuine issue, a response to Plaintiffs'

statement of material facts and a proposed order are also attached hereto.

        Respectfully submitted,

        PETER J. NICKLES
        Acting Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division

        **/s/ Edward P. Taptich**
        EDWARD P. TAPTICH
        Chief, Equity Section 2
        Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
August 20, 2008          E-mail: Juliane.DeMarco@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                                    |     |                                 |
|----------------------------------------------------|-----|---------------------------------|
|                                                    | )   |                                 |
| CARL ANDERSEN AND ALYSON STEELE,                   | )   |                                 |
| parents and next friends of J.A., a minor,         | )   |                                 |
|                                                    | )   |                                 |
| Plaintiffs,                                        | )   |                                 |
|                                                    | )   |                                 |
| v.                                                 | )   | Civil Action No. 08-0580 (RJL)  |
|                                                    | )   |                                 |
| DISTRICT OF COLUMBIA, *et al.,*                    | )   |                                 |
|                                                    | )   |                                 |
| Defendants.                                        | )   |                                 |
|                                                    | )   |                                 |
|                                                    | )   |                                 |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION AND BACKGROUND**

Plaintiffs appeal a January 3, 2008, administrative decision issued by a hearing

officer pursuant to the Individuals with Disabilities Education Improvement Act of 2004,

20 U.S.C. §§ 1400 et seq. ("IDEIA").  At issue in this case is whether the District of

Columbia Public Schools ("DCPS") denied the student a free appropriate public

education ("FAPE") by not providing an appropriate individualized education program

("IEP") and placement for the student.  As the Defendants will demonstrate below, the

student's IEP was current and appropriate and the proposed placement would have

provided the student with a free appropriate public education ("FAPE") as required under

the IDEIA.

Plaintiffs bring this suit on behalf of J.A., who is a four year-old student living in

the District of Columbia who has been determined eligible for special education and

related services.  Complaint at 1.  In Fall of 2006, his parents requested that DCPS

1

evaluate J.A. to determine his eligibility for special education services.  Administrative Record at page 33. (hereinafter "AR. at ____").  The DCPS Central Assessment Referral and Evaluations Center ("CARE Center") conducted a series of evaluations including: a November, 2, 2006 Screening Report; a November 8, 2006 Developmental Assessment; a November 30, 2006, Occupational Therapy Evaluation Report; and a December 5, 2006 Speech-Language Review and Observation.  AR. at 32-50.

An IEP team convened to review those evaluations and determine if special educational services were warranted.  The team classified J.A. as "developmentally disabled" and created an IEP to address J.A.'s needs.  *Id.*  J.A.'s initial IEP, dated December 12, 2006, required 24.5 hours of specialized instruction and weekly sessions of 1.5 hours with a speech language therapist and an occupational therapist. AR. at 244. The IEP contained goals and objectives addressing the following areas:  Cognitive Skills, Communication, Motor/Health, Social Emotion and Adaptive Skills. AR. at 244-256. J.A.'s IEP team, including his parents, signed and agreed with this IEP on December 12, 2006. AR. at 244.  Plaintiffs do not challenge the procedure by which this IEP was created in December 12, 2006.  *See* Complaint, generally.  J.A's initial placement was an inclusion classroom, out of general education at West Elementary School ("West"). AR. at 256.

Five months after J.A.'s placement at West, in April 2007, J.A.'s parents met with J.A.'s special education teacher, Ms. Mesach to discuss J.A.'s progress and future placement.  AR. at 259. The IEP was not modified at this April 2007, meeting.  *Id.;* T. at 155.  On June 12, 2007, a team reconvened.  AR. at 113.  The team was chaired by Zondra Johnson, placement specialist for early childhood education at the CARE Center

2

and also included J.A.'s educational advocate Stephanie Owens; J.A.'s parents Carl Andersen and Alyson Steele; and JoAnn Lowrey, special education teacher at the CARE Center. AR.at 113, T. at 146, 154. Ms. Johnson became familiar with J.A. during his assessment at the CARE center, and had observed J.A. in his classroom at West Elementary School. T. at 153. At this meeting, the IEP team agreed that they should reconvene due to a lack of information regarding the student's progress at West. T. at 155. After this meeting and at the request of Ms. Johnson, Ms. Mesach prepared a "goals update" summary in which "she included all of the goals on the IEP and indicated if they had been mastered or not." AR. 114, T. at 157. She also prepared an IEP report card and a progress report. AR. at 115-117.

On August 15, 2007, a team reconvened, again chaired by Ms. Johnson of the CARE Center. AR. at 215. Also in attendance were J.A.'s parents and Ms. Owens, as well as Monica Harris, a DCPS speech pathologist; and Marion McDonnell, a special education teacher at the CARE center. AR. at 215-217. The notes from this meeting reflect that the team determined "[a]t this time, [J.A.'s] IEP is current and based on the progress notes of 6-11-07 it appears appropriate [. . .] The information presented shares that [J.A.] has not made progress." *Id.* No changes were made to types of services or hours; the only change was regarding *the placement* where the services and education would be provided. T. at 160. The team discussed Ann Beers Elementary School ("Ann Beers") as a proposed change in placement. AR. at 215. J.A.'s father indicated that he disagreed with the proposed placement and planned to enroll J.A. at a private school. *Id.* At the conclusion of that meeting, DCPS issued a Prior Notice of Placement formally notifying J.A.'s parents that J.A. would be placed at Ann Beers. AR. at 217.

On November 1, 2007, Plaintiffs filed an administrative due process request seeking "half day placement at Jenny Waelder Hall Center; speech, occupational, and DIR therapy." AR. at 23. The due process hearing took place on December 20, 2007, and the Hearing Officer Will Purcell rendered his decision on January 3, 2008. AR. at 3, 5. The Hearing Officer determined that Plaintiffs did not meet their burden of proof to establish that the IEP was inappropriate, or that the proposed placement at Ann Beers was inappropriate. AR. at 5. Plaintiffs here appeal that order and seek, *inter alia*, reimbursement for tuition at Jenny Waelder Hall for Children ("Jenny Waelder") retroactive for 2007-2008. *See* Complaint at 10.

As Defendants demonstrate below, the hearing officer's decision was appropriate in all respects and summary judgment should be granted to the Defendants.

## STANDARD OF REVIEW

### I.      Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation.  Id.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).  Factual determinations of the hearing officer are to be accorded due weight.

## II.    Review of administrative decisions under the IDEIA.

The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  *Angevine v. Smith,* 292 U.S.

App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. *Rowley*, 458 U.S. at 207-08. Accordingly, this Court must give the hearing officer's determination "due weight," and in order to prevail Plaintiffs, must show by a "preponderance of the evidence" that the hearing officer was wrong.

"Where the Hearing Officer's findings are based on credibility determinations of live witness testimony … and there is no supplementation of the record before the Court, particular deference is due to the Hearing Officer's decision." *R.D. v. District of Columbia,* 374 F. Supp. 2d 84, 89-90 (D.D.C. 2005).

Because the subject HOD was appropriate in all respects challenged, Plaintiffs cannot make the required showing, and summary judgment should be granted to the Defendants.

## ARGUMENT

### III.    The hearing officer's determination that the Defendants is fully supported by the Administrative Record and should be upheld.

The hearing officer determined that Plaintiffs had not "met the burden of proof pursuant to 53 DCR 5249 (June 30, 2006), to establish that the student's IEP is inappropriate or that Anne Beers is an inappropriate placement." AR. at 5. As detailed

6

below, the hearing officer's determination on these issues was legally correct and supported by the record herein.

The IDEIA is designed to provide each student with a "basic floor of opportunity . . . [that] consists of access to specialized instruction and related services which are individually designed to provide education benefit to the handicapped child." *Rowley,* 458 U.S. at 201. While the IDEIA "guarantees a free appropriate education, it does not, however, provide that this education will be designed according to the parent's desires." See *Shaw v. District of Columbia,* 238 F.Supp. 2d 127, 139 (D.D.C. 2002) (citing *Rowley, 458 U.S.* at 207). "Thus, proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act." *Kerkam,* 862 F.2d at 886. Here, DCPS provided J.A. with an appropriate IEP and proposed an appropriate placement to implement that IEP. Although this placement was not accepted by J.A.'s parents, this does not render the IEP or the placement inadequate.

    **A.**    **J.A.'s Individualized Education Program was <u>appropriate and provided J.A. with FAPE.</u>**

A school district can meet is obligations to provide FAPE by "providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. *Razzaghi v. District of Columbia,* 2005 U.S. Dist LEXIS 36771, * 19 (D.D.C. 2005) *citing Rowley*, 458 U.S. at 203. This instruction is accomplished by the implementation of an IEP which must be "reasonably calculated" to confer an educational benefit on the child. *Rowley,* 458 U.S. at 207. The IEP is created by a team composed of the parents, a regular education teacher of the child, a special education teacher, someone from the Local Education Agency who is knowledgeable about the special educational services available, and someone who can interpret the

evaluation results.   20 U.S.C. §1414(d)(1)(B).  The IEP team reviews existing

evaluations, considers classroom observations and input from the student's teachers, in

developing the student's IEP.  *See* 20 U.S.C. §1414(c)(1).  The IEP team must review the

child's IEP " not less frequently than annually . . ."  20 U.S.C. § 1414(d)(4)(A)(i).

### 1.    December 12, 2006, IEP

The IEP at issue in the due process hearing was created on December 12, 2006.

AR. at 244.  Plaintiffs do not contest the process by which this IEP was created.  *See*

Complaint, generally.  The DCPS CARE Center conducted a series of evaluations in

prior to the initial IEP meeting to determine special education eligibility and services,

including: a November, 2, 2006 Screening Report; a November 8, 2006 Developmental

Assessment; a November 30, 2006, Occupational Therapy Evaluation Report; and a

December 5, 2006 Speech-Language Review and Observation.  AR. at 32-50.  The IEP

team determined that J.A. was eligible for special education and related services and

classified him as "developmentally delayed."  *Id*.  They created an IEP which contained

goals and objectives addressing the following areas:  Cognitive Skills, Communication,

Motor/Health, Social Emotion and Adaptive Skills. AR. at 244-256.  This IEP required

24.5 hours of specialized instruction and 1.5 hour weekly sessions each with a speech

language therapist and an occupational therapist. AR. at 244, 256.  The IEP team placed

J.A. in an inclusion classroom, out of general education, at West Elementary School. AR.

at 256.  J.A.'s IEP team  – including his parents – agreed to and signed this IEP on

December 12, 2006.  AR. at 244.

2.    **Spring 2007 IEP Meetings**

J.A.'s December 12, 2006, IEP was current and up to date in the Spring of 2007 when Plaintiffs and DCPS personnel began meeting regarding J.A.'s progress and placement. *See* AR. at 215-217 and § 1414(d)(4)(A)(i). This IEP was not revised at the June 12, 2006, meeting or the August 17, 2007, meeting. AR. at 127. The IEP was not changed, not due to oversight, neglect or refusal by DCPS, but rather was a conclusion made by the IEP team based on the progress notes provided by the student's teacher. *Id.* Indeed, the notes from the meeting reflect this clearly: "At this time, [J.A.'s] IEP is current and based on the progress notes of 6-11-07 it appears appropriate. The information presented shares that [J.A.] has not made progress." *Id.* At the hearing, Ms. Johnson testified that no changes were made to types of services or hours; the only change was regarding *the placement* where the services and education would be provided. T. at 160 (emphasis added).

In support of their assertion that the IEP needed revision and was not appropriate, Plaintiffs contend that "DCPS had failed to provide any documentation of J.A.'s progress (or lack thereof) for the team's consideration." Pl. Mot. at 4. However, this is not the case. Prior to the August 15, 2007, meeting, DCPS, on March 2, 2007, prepared a Speech and Language Therapy Report, documenting, *inter alia,* J.A.'s "emerging skills." AR. at 78. In addition, as noted, J.A.'s special education teacher, Ms. Meshach, prepared a "goals update" summary, an IEP report card and a progress report for review. AR. 114, T. at 157. In addition to this documentation, J.A.'s parents had met with Ms. Meshach on April 18, 2007 to discuss J.A.'s progress. AR. at 259.

Also in support of their assertion that J.A.'s IEP was inappropriate Plaintiffs contend that the IEP "as written and implemented . . . in fact caused regression." Pl. Mot. at 28. However, Plaintiffs' own expert witness at the due process hearing, Dr. Griffin Doyle, a psychologist who was working with J.A. testified that periodic regressions or perceived regressions are *inherent* to J.A.'s developmental disability:

> [T]he debilitating effects of his constitutional problems **would cause periodic regressions** from time to time. I think more characteristically how it would manifest would be that **his progress would be more gradual, might even take a pattern of two steps forward and one step back like a little bit of a regression** […] **his variable functioning would be typical of kids like this** and that their progress would be shown by having fewer and fewer regressions and that their -- the steps forward they take are becoming more and more consistent and more and more solid. [T]he nervous systems themselves that are, as I put it, the equipment that he was born with that isn't very -- excuse me -- very reliable for him, **which also explains why some days he's functioning like he's progressed and then inexplicably another time he may not be**, that that's one of the terrible, terrible headaches for kids who have atypical nervous systems, is that they don't **-- they're not consistent themselves**, and it's that's one of the great challenges I think for kids like this.

Tr. at 100 (emphasis added).[1]

Thus, the hearing officer had before him the current December 12, 2006, IEP, which was signed and agreed to by J.A.'s parents, along with the relatively short period of time between the creation of the IEP and J.A.'s parents' decision to unilaterally place J.A. at a private school in August 2007. In addition, the thrust of Plaintiffs' argument at the hearing was, as it is here, that the IEP was inappropriate because the teacher did not provide progress reports and because J.A. made no progress and appeared to regress with the IEP created. However, as shown, Plaintiffs *were* provided with reports from J.A.'s teacher and speech therapist. More significantly, the strong testimony from the Plaintiffs'

---

[1] This testimony was included in response to extensive inquiries from the hearing officer, demonstrating the hearing officer's full and complete consideration of the record before him. *See* T. at 99-102, 104-107.

own expert, Dr. Doyle, established that with J.A.'s disability he will inevitably have periods or regression or perceived regression. With this evidence before him, the hearing officer properly found that the Plaintiffs had not met their burden of proving by a preponderance of the evidence that the IEP had was inappropriate.

**B.     DCPS' proposed placement of Ann Beers was appropriate.**

The hearing officer correctly found that Plaintiffs did not meet their burden to prove the proposed placement was not appropriate. AR. at 3. As detailed below, the record shows that DCPS' proposed placement at Ann Beers could properly implement all aspects of J.A.'s IEP, and J.A.s proposed classroom included all of the attributes that Ms. Owens, J.A.'s educational advocate, identified as necessary for J.A.'s education. In addition, the proposed placement was responsive to the parents' and educational advocate's desire to have J.A. placed in a classroom with fewer students.

DCPS provided testimony of two individuals, Zondra Johnson and Rhoda Matthews, who are intimately familiar with the Ann Beers program and demonstrated that the program could implement J.A.'s IEP. Ms. Rhoda Matthews, the special education coordinator at Ann Beers, testified that Ann Beers could implement the special education and related services required by J.A.'s IEP. T. at 129-130. Ms. Matthews visited the classroom in which J.A. would have attended approximately three times per week, and at the time of the hearing had visited the classroom approximately *fifty times* that school year. T. at 131. She also testified that the classroom is a structured environment, without a high noise level and the teacher and paraprofessional in the classroom employ models for pragmatic language use, transitional cues and picture scheduling. T. at 123, 127.

Ms. Johnson, who designed the program and visited the program weekly, also testified in support of J.A.'s placement at Ann Beers.  T. at 170-173.  Like Ms. Matthews, Ms. Johnson testified that the Ann Beers classroom is a structured environment, without a high noise level, and the teacher and aide employ picture schedules and transitional cues. T. at 170-173.  Ms. Johnson further testified that the students are all classified as "developmentally disabled," with varying levels of speech abilities.  T. at 170-173.  The testimony of both Ms. Johnson and Ms. Matthews was consistent and supports the appropriateness of the Ann Beers placement.

These are the *precise* attributes identified by J.A.'s own educational advocate, Ms. Owens, as necessary to an educational program for J.A:

> I think [J.A] needs a classroom that is very -- provides a lot of **models** for language, especially pragmatic language. I feel that [J.A.] needs a classroom with **high structure**, especially **pictorial cues**, scheduling. […] previewing, he needs modeling. He needs **transitional warnings**. He needs good models in the classroom, the students in the classroom so he can learn from his peers as well as his teachers. He definitely needs a placement that is **low noise level** due to his sensory needs, and definitely a team approach that is integrated throughout his day that also meets regularly to educate the parents as well as the staff members all meet together.

T. at 44 (emphasis added).  While Plaintiffs' educational advocate, Ms. Owens, and J.A.'s mother testified that these attributes were not available in the classroom at Ann Beers, they had visited the program for a *single short visit* to Ann Beers.   T. at 38-43; AR. at 158-159.  In addition, the visit occurred during a time in the day when the children had just returned from recess, and the noise level is, understandably, above the norm. AR. at 158-159.

In addition, the placement was responsive to J.A.'s parents' and advocate's concerns about the size of the classroom at West.  The August 15, 2007, meeting notes

reflect that J.A.'s father expressed concern about the size of J.A.'s class at West. AR. at 215. He reiterated this concern at the due process hearing noting that J.A.'s classroom at West had eighteen students, and that was "too many kids, too many kids with real problems." T. at 208. Ms. Owens, J.A.'s educational advocate testified similarly, "I think J.A. needs a small student to teacher ratio." T. at 43-44. In response to these concerns, DCPS offered a placement at a smaller classroom at Ann Beers. AR. at 215. Ms. Johnson testified that the maximum number of students in the Ann Beers classroom is ten and the classroom always has one teacher and one paraprofessional. T. at 163, 170. Thus, the proposed placement would have reduced the number of students J.A. would have had in his classroom from eighteen to a maximum of ten.

All services contemplated by the December 12, 2006, IEP and all of the specific attributes identified by Plaintiffs' educational advocate were part of the Ann Beers program. The program offered a classroom with fewer students. While Plaintiffs contend that Ann Beers could not offer J.A. psychological counseling, this was *not* a related service contemplated by J.A.'s IEP. Pl. Mot. at 16, AR. at 244-256.

The hearing officer properly found that the Plaintiffs had not met their burden to prove, by a preponderance of the evidence, that DCPS proposed placement of Ann Beers. AR. at 3. As shown above, this finding is fully supported by the record and thus, must be upheld.

IV.    **The alleged procedural violations have not resulted in the loss of educational opportunity.**

Plaintiffs contend that DCPS failed to provide progress reports, failed to convene a complete IEP team, failed to revise the IEP and proposed an inappropriate program

which resulted in a denial of FAPE. Pl. Mot. at 21. However, Plaintiffs exaggerate both the facts and the law in their related arguments.

With regard to the law, while Plaintiffs acknowledge cases which "draw a distinction between minor procedural violations and those that affect the provision of free, appropriate education," they also direct this court to a number of Fourth Circuit cases that stand for the proposition that a technical violation of the IDEIA will *per se* support a finding of a denial of FAPE. Pl. Motion at 20-21. This is contrary to the clear law of this Circuit. The D.C. Circuit has held that procedural violations are actionable *only if* they affect the student's substantive rights. *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) *accord, Kingsmore ex rel. Lutz v. District of Columbia,* 466 F.3d 118, 119 (D.C. Cir. 2006) (per curiam); s*ee also, Schoenbach v. District of Columbia*, 309 F.Supp.2d 71, 78 (D.D.C. 2004) ("Claims of procedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE."), *Simmons v. District of Columbia,*, 355 F.Supp.2d 12 at 18 (D.D.C. 2004); and *A.I. v. District of Columbia*, 402 F.Supp.2d 152, 164 (D.D.C. 2005).

### A.    <u>Plaintiffs did, in fact, receive progress reports</u>.

Although Plaintiff state that DCPS failed to progress reports, this is simply not true. Plaintiffs rely heavily on the fact that in the June 12, 2007, meeting Ms. Johnson "stated that Teacher was in error in not documenting child's progress with evaluation procedures stated on the IEP." AR. at 211. However, after this meeting and at the request of Ms. Johnson,  the teacher, Ms. Meshach, was asked to provide progress reports and in response prepared a "goals update" summary in which "she included all of the goals on the IEP and indicated if they had been mastered or not," a progress report and an

IEP report card identifying areas in which J.A. had or had not made progress. AR. 114-117, T. at 157. In addition, on March 2, 2007, J.A.'s speech therapist at West prepared a Speech and Language Therapy Report identifying, *inter alia*, "emerging skills." AR. at 78. Defendants acknowledge that Plaintiffs contested the adequacy of the data during the due process hearing, but the contention that the reports were not provided is simply untrue.

> **B.    The team that determined J.A.'s proposed**
> **placement at Ann Beers was properly comprised.**

Plaintiffs contend that DCPS' failed to convene a proper IEP team which, in turn, resulted in a denial of FAPE. Pl. Mot. at 24. However, as discussed above, *no modifications or changes* were made to J.A.'s IEP. The only change that made was that of *placement.* With regard to placement decisions, the IDEIA dictates that "each local educational agency or State educational agency shall ensure the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child." 20 U.S.C. § 1414(e). The relevant regulations require a placement decision to be made by "a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options." 34 C.F.R. 300.116(a)(1). DCPS was clearly within these requirements when the proposal to change J.A.'s placement was made.

J.A.'s proposed placement at Ann Beers was determined at the August 15, 2007, meeting; in attendance at that meeting were: J.A.'s parents; Ms. Owens; Zondra Johnson; Monica Harris, a DCPS speech pathologist; and Marion McDonnell, a special education teacher at the CARE center. AR. at 215-217. Ms. Johnson met the qualifications for "persons knowledgeable about the child, the meaning of the evaluation data, and the

placement options." Ms. Johnson had become familiar with J.A. during his assessment at the CARE Center and had observed J.A. in his classroom at West Elementary School. T. at 153. Ms. Johnson had also collected additional information regarding J.A. from his special education teacher at West – Ms. Meshach. AR. at 114-117. Ms. Johnson was certainly knowledgeable of evaluation data and placement options as she had assisted in the placements of approximately 3,000 children in the District. T. at 150. She was specifically familiar with the placement offered to J.A., as she had herself designed the program at Ann Beers and visited on a weekly basis in support of the program's teams. T. at 163. Thus, the team that made the placement decision for J.A. was properly comprised pursuant to the IDEIA and relevant regulations.

The team, as convened was properly constituted to make a change in placement, nevertheless, at the request of J.A.'s parents and advocate, DCPS brought in additional personnel to assist the IEP team. The June 12, 2006 meeting included J.A.'s parents and his educational advocate, Ms. Owens, Ms. Johnson, supervisor for early childhood special education and Joann Lowrey, a program specialist at DCPS. AR. at 218. At that meeting, J.A.'s advocate requested that the meeting be reconvened and J.A.'s teacher and related service providers be present. *Id.* In response, Ms. Johnson convened a team including both a special education teacher who was certified in early childhood development and a speech pathologist. AR. at 215. While they had not instructed or provided services to J.A., they were familiar with his records and background and they were the available special education teacher and speech pathologist on staff at the CARE center. T. at 174. In addition, as noted, *supra*, Ms. Johnson collected and provided progress reports from J.A.'s special education teacher, Ms. Meshach.

**C.    The IEP was up to date and appropriate, and the
proposed placement at Ann Beers was also appropriate.**

As discussed above, the IEP and the proposed placement at Ann Beers were

appropriate to provide J.A. with FAPE.  Free appropriate education is ultimately the goal

of an IDEIA proceeding and if the school system complies, there is no violation of the

IDEIA.  *Lesesne,* 447 F.3d at 834; *Shaw,* 238 F.Supp.2d at 136 ("If a disabled child

received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school

district has fulfilled its statutory obligations." (quoting *MM v. Sch. Dist. of Greenville

County,* 303 F.3d 523, 534 (4th Cir. 2002)).

**IV.    Because J.A. was provided with FAPE in a timely manner, Plaintiffs are not
entitled to tuition reimbursement.**

20 U.S.C. §1412(a)(10)(C)(i) provides that:

> Subject to subparagraph (A), this subchapter does not require a local
> educational agency to pay for the cost of education, including special
> education and related services, of a child with a disability at a private
> school or facility if that agency made a free appropriate public education
> available to the child and the parents elected to place the child in such
> private school or facility.

20 U.S.C. §1412(a)(10)(C)(ii) provides that:

> If the parents of a child with a disability**,** who previously received special
> education and related services under the authority of a public agency,
> enroll the child in a private elementary school or secondary school ***without
> the consent of or referral by the public agency,*** a court or a hearing
> officer may require the agency to reimburse the parents for the cost of that
> enrollment if the court or hearing officer finds that the agency had not
> made a free appropriate public education available to the child in a timely
> manner prior to that enrollment  (emphasis added.)

See also 34 C.F.R. § 300.403(c).

Parents who unilaterally decide to place their disabled child in private school,

without consent of local school officials, "do so at their own financial risk." *Florence*

*County Sch. Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)

(quoting *Burlington,* 471 U.S. at 373-- 74 (1985)).   "Parents may receive tuition

reimbursement if a court finds "both that the public placement violated IDEA and the

private school placement was proper under the Act." *Id.* at 15.   "The first factor is a

threshold condition, for if the public school placement would have been appropriate, the

analysis ends, and a disabled child's parents are not entitled to reimbursement." *Razzaghi*

*v. District of Columbia*, 2005 U.S. Dist. LEXIS 36771, *12 (D.D.C., September 28,

2005) *citing* 20 U.S.C. § 1412(a)(10)(C)(I) (indicating that IDEIA "does not require a

local educational agency to pay for the cost of education, including special education and

related services, of a child with a disability at a private school or facility if that agency

made a free appropriate public education available to the child and the parents elected to

place the child in such private school or facility."); *M.C. v. Valentin Bd. of Educ.,* 226

F.3d 60, 66 (2d Cir.2000) ("Only if a court determines that a challenged IAP [sic] was

inadequate should it proceed to the second question."),"

Defendants have established, *supra,* that both the IEP and the proposed placement

at Ann Beers were appropriate.  DCPS proposed Ann Beers as J.A.'s placement on

August 15, 2007.  AR. at 217.  Since DCPS had proposed an appropriate educational

placement for J.A. prior to Plaintiffs' unilateral placement of J.A. at Jenny Waelder,

Plaintiffs are not entitled to tuition reimbursement.  Accordingly, the January 3, 2008,

HOD must be upheld.

## VI.    The Hearing Officer considered all of Plaintiffs' evidence and arguments and his ultimate determinations should be deferred to in this case

Plaintiffs contend the HOD is not due any deference because the hearing officer's

findings were not "regularly made."  Pl. Mot. at 11.  Plaintiffs also contend that the HOD

is not due deference with regard to witness credibility because the hearing officer placed

undue weight on the testimony of school officials.  Pl. Mot. at 14.  As shown below, both

of these arguments must be rejected, and the hearing officer's decision should be afforded

the usual deference, discussed *supra*, which is due an IDEIA HOD.

### A.  <u>The Hearing Officer's decision was 'regularly made.'</u>

Plaintiffs argue that the HOD is not sufficiently detailed to have been "regularly

made."  Pl. Mot. at 14.  However, cases cited by Plaintiffs in support of this assertion

demonstrate that decisions rejected as not "regularly made" are those with a defect in *the*

*decision-making process* or the *utter lack of support* in the record, rather than the amount

of detail located in the hearing officer's written decision.  *See e.g.  Doyle v. Arlington*

*County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)(review officer's discrediting of a

witness who he had not seen or heard testify in the face of the crediting of the same

witness by a hearing officer who had seen the witness testify was improper); *and Petway*

*v. District of Columbia*, 2005 U.S. Dist. 36226 (D.D.C. 2005)(hearing officer's finding

that placement was appropriate although defendants presented "*no testimony and made*

*no argument*" did not deserve usual deference).

Indeed, case law cited by Plaintiffs explains that a hearing officer's determination

which is "sufficiently detailed to permit the district court to understand the basis for the

hearing officer's resolution of the parent claims" will be afforded all due deference.  *J.P.*

*v. County Sch. Bd. of Hanover County*, 516 F.3d 254, 261 (4th Cir. 2008).  The court in

*J.P.* rejected a higher level of detail requirement, stating that the lower court "improperly

held that the hearing officer to a standard not dictated by statute or case law. . ."  *Id.* at

263.  The court emphasized, "our case law has never suggested that any particular level

of detail is required in the hearing officer's decision . . . [i]f anything, our case law

suggests that the level of detail required of the hearing officer is relatively low." *Id.* at

262. The HOD at issued in this case, was regularly made, and is comparable to the HOD

in *J.P.*:

> In this case, there is nothing in the record suggesting the heading officer's
> process in resolving the case was anything other than ordinary. That is,
> the hearing officer conducted a proper hearing, allowing the parents and
> the School Board to present evidence and make arguments, and the
> hearing officer by all indications resolved the factual questions in the
> normal way, without flipping a coin, throwing a dart, or otherwise
> abdicating his responsibility in this case.

*Id. at* 262.

Plaintiffs also assert that this case is indistinguishable from *Petway v. District of

Columbia*, 2005 U.S. Dist. 36226 (D.D.C. 2005). Pl. Mot. 13-14. *Petway* involved an

HOD which did not address *any* of the issues, including whether the defendant had

provided an appropriate IEP or placement for the child, but then proceeded to deny

reimbursement for private placement. *Petway* at *21. Here, unlike in *Petway,* the HOD

includes explicit determinations that Plaintiffs did not meet the "burden of proof [. . .] to

establish that the student's IEP is inappropriate or that Anne Beers is an inappropriate

placement." AR. at 5. The hearing officer's silence on the issue of whether or not Jenny

Waelder is an appropriate program is consistent with the relevant case law. *See Razzaghi

v. District of Columbia*, 2005 U.S. Dist. LEXIS 36771, *12 (D.D.C., September 28,

2005) ("The first factor is a threshold question, for if the public school placement would

have been appropriate, the analysis ends, and a disabled child's parents are not entitled to

reimbursement.") *citing* 20 U.S.C. §1412(a)(10)(C)(I).

Here, the record does not show, and Plaintiffs do not offer, any examples of an *improper process* by which the hearing officer reached his decision. In addition, the hearing officer's decision is clearly supported by documents and testimony in the record. Thus, the hearing officer's decision was 'regularly made' and his determination that Plaintiffs had not met there burden to prove that DCPS failed to provide and appropriate IEP or an appropriate placement for J.A deserves 'due weight' and deference to the expertise of the hearing officer.

> **B.     The Hearing Officer's Decision is entitled to deference
> on issues of credibility and weight of the evidence.**

Plaintiffs contend that the hearing officer gave complete deference to school officials, an allegation which is unsupported by the record. Pl. Mot. at 15. A hearing officer is not required to offer a detailed explanation for why he may give more weight to one party's evidence over another. *See A.I. v. District of Columbia*, at 164, *citing Schoenbach v. District of Columbia*, 309 F.Supp.2d 71, 78 (D.D.C. 2004), *see also Z.P.* at 306 (*"Doyle* requires the *district court* to explain its reasons for rejecting the findings of a hearing officer; it does not require the *hearing officer* to explain in detail its reasons for accepting the testimony of one witness over that of another.") Because the hearing officer, as opposed to the court "has an opportunity to hear testimony in person, examine the demeanor of the witness and reactions of the participant, and can bring immeasurable experience and expertise in this specialized area," judicial deference is especially appropriate. *A.I.* at 164.

First, contrary to Plaintiffs assertions, the HOD *does* note the testimony of Plaintiffs' educational advocate and states, "[i]n May 2007, educational advocate Stephanie Owens conducted two classroom observations and reported that the student

was not benefiting from the classroom environment at West Elementary.  The educational advocate also recommends that the student is placed in a full time special education setting with low student-to-teacher ratios that can provide integrated therapy services." AR. at 4-5.  More importantly, the record is clear that Ms. Johnson and Ms. Matthews were familiar with the Ann Beers Program in a way that Plaintiffs' witnesses simply were not.  As noted, Ms, Johnson *designed the program* and Ms. Mathews visited the school approximately three times per week and had visited during the school year a total of approximately 50 times.  T. at 131,170.

Finally, a review of the record reveals the hearing officer himself did a significant amount of questioning of witnesses including Plaintiffs' witnesses Ms. Owens and Mr. Doyle and DCPS witnesses Ms. Matthews and Ms. Johnson.  T. at 70-74, 90-102,104-107, 141-142, 195-200.  Notably, the hearing officer made extensive inquiries of the two – Ms. Owens and Dr. Doyle – upon whose testimony the Plaintiffs so heavily rely.  T. at 70-74, 104-107.  As significant is the fact that the questions asked by the hearing officer were on the topics most heavily contested by the Plaintiffs both here and at the due process hearing – namely, whether the data was available and sufficient to support a decision to not change the IEP or support placement at Ann Beers and whether J.A. regressed while he was at West.

Should this Court find that the HOD is not due the ordinary deference afforded in review of IDEIA appeals, the record itself supports the same conclusion – Plaintiffs do not meet their burden to show that the December 12, 2006, IEP was in appropriate or that the proposed placement at Ann Beers was similarly inappropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Defendants' Motion for

Summary Judgment, and deny Plaintiffs' Motion for Summary Judgment.


Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
August 20, 2008            E-mail: Juliane.DeMarco@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CARL ANDERSEN AND ALYSON STEELE,        )
parents and next friends of J.A., a minor,  )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )    Civil Action No. 08-0580 (RJL)
                                        )
DISTRICT OF COLUMBIA, *et al.,*         )
                                        )
        Defendants.                     )
                                        )
_____)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 56.1, the Defendants submit this statement of material facts as to which there is no genuine issue:

1.      J.A. is a four year old student living in the District of Columbia who has been determined eligible for special education and related services.  Complaint, at 1.

2.      The DCPS Central Assessment Referral and Evaluations Center ("CARE Center") conducted a series of evaluations of J.A. including: a November, 2, 2006 Screening Report; a November 8, 2006 Developmental Assessment; a November 30, 2006, Occupational Therapy Evaluation Report; and a December 5, 2006 Speech-Language Review and Observation.  Administrative Record at page 32-50 (hereinafter "AR. at _____").

3.      J.A.'s initial IEP, dated December 12, 2006, required 24.5 hours of specialized instruction and weekly sessions of 1.5 hours each with a speech language therapist and an occupational therapist. AR. at 244.

4.      The IEP contained goals and objectives addressing the following areas:  Cognitive Skills, Communication, Motor/Health, Social Emotion and Adaptive Skills. AR. at 244-256.

5.      J.A.'s IEP team, including his parents, signed and agreed with this IEP on December 12, 2006. AR. at 244.

6.      Plaintiffs do not challenge the adequacy of the procedure or propriety of this IEP as implemented in December 12, 2006.  *See* Complaint, generally.

7.      J.A's initial placement was an inclusion classroom, out of general education at West Elementary School ("West").  AR. at 256.

8.      On April 18, 2007, J.A.'s parents met with J.A.'s special education teacher at West, Ms. Mesach to discuss J.A.'s progress and future placement.  AR. at 259.

9.      The IEP was not modified at this April 18, 2007, meeting.  AR. at 259; T. at 155.

10.      On June 12, 2007, a team reconvened.  AR. at 113.  The team was chaired by Zondra Johnson the placement specialist for early childhood education at the CARE Center and also included Stephanie Owens, J.A.'s educational advocate; Carl Andersen and Alyson Steele, J.A.'s parents; and JoAnn Lowrey, special education teacher at the CARE Center.  AR.at 113; T. at 146, 154.

11.      In June 2007, J.A.'s special education teacher at West, Ms. Mesach prepared a "goals update" summary in which "she included all of the goals on the IEP and indicated if they had been mastered or not."  AR. 114; T. at 157.  She also prepared an IEP report card and a progress report.  AR. at 115-117.

12.      On August 15, 2007, a team reconvened, again chaired by Zondra Johnson of the CARE Center.  AR. at 215.  J.A.'s parents and his educational advocate, Ms. Owens was

also in attendance as were Monica Harris, a DCPS speech pathologist; and Marion

McDonnell, a special education teacher at the CARE center.  AR. at 215-217.

13.    The notes from the August 15, 2007 meeting reflect that the team determined "[a]t

this time, [J.A.'s] IEP is current and based on the progress notes of 6-11-07 it appears

appropriate. The information presented shares that [J.A.] has not made progress." *Id.*

14.    No changes were made to types of services or hours; the only change was

regarding the placement where the services and education would be provided.  T. at 160.

15.    Also at this August 17, 2007 meeting, the team discussed Ann Beers as a

proposed change in placement.  AR. at  215.  J.A.'s father indicated that he disagreed

with the proposed placement and planned to enroll J.A. at a private school.  *Id.*

16.    Ms. Matthews visited the classroom in which J.A. would have attended

approximately three times per week, and at the time of the hearing had visited the

classroom approximately *fifty times* that school year.  T. at 131.

17.    Ms. Matthews testified that the classroom is a structured environment, without a

high noise level and the teacher and paraprofessional in the classroom employ models for

pragmatic language use, transitional cues and picture scheduling.  T. at 123, 127.

18.    Ms. Johnson, who designed the program and visited the program weekly, also

testified in support of J.A.'s placement at Ann Beers.  T. at 170-173.

19.    Ms. Johnson testified that the Ann Beers classroom is a structured environment,

without a high noise level, and the teacher and aide employ picture schedules and

transitional cues.  T. at 170-173.

20.     Ms. Johnson testified that the maximum number of students in the Ann Beers classroom is ten and the classroom always has one teacher and one paraprofessional.  T. at 163, 170.

21.     At the conclusion of the August 15, 2007, meeting, DCPS issued a Prior Notice of Placement formally notifying J.A.'s parents that J.A. would be placed at Ann Beers.  AR. at 217.

22.     On November 1, 2007, Plaintiffs filed an administrative due process request seeking "half day placement at Jenny Waelder Hall Center; speech, occupational, and DIR therapy."  AR. at 23.

23.     The due process hearing took place on December 20, 2007 and the hearing officer rendered is decision on January 3, 2008.  AR. at 3, 5.

24.     Hearing Officer Will Purcell determined that Plaintiffs did not meet their burden of proof to establish that the IEP appropriate or that the proposed placement at Ann Beers was similarly inappropriate.  AR. at 5.

25.     Ms. Johnson became familiar with J.A. during his initial assessment at the CARE center, and had observed J.A. in his classroom at West Elementary School.  T. at 153.


Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
August 20, 2008    E-mail: Juliane.DeMarco@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CARL ANDERSEN AND ALYSON STEELE,  )
parents and next friends of J.A., a minor,  )
                                                  )
       Plaintiffs,  )
                                                  )
       v.  )  Civil Action No. 08-0580 (RJL)
                                                  )
DISTRICT OF COLUMBIA, *et al.,*  )
                                                  )
       Defendants.  )
                                                  )

_____)

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT
OF MATERIAL FACTS AS WHICH THERE IS NO GENUINE ISSUE**

      The Defendants, by counsel, here respond to the Plaintiff's Statement of Material

Facts.  The Defendants note that the parties agree that this case may be disposed of by

summary judgment motions.  Thus, while the Defendants do not claim that the facts

contained in the Plaintiff's Statement create a genuine issue requiring trial, the Court

should assess the weight ascribed to these fact statements and their materiality to the

issues presented in this case accordingly.  Paragraph numbers correspond to the

paragraph numbers in Plaintiffs' Statement.

1.      Not disputed.

2.      No dispute as to sentence one or sentence two.  As to sentence three, Defendants

do not dispute that J.A.'s educational advocate reports these are the necessary services for

J.A.

3.      Not disputed.

4.      Not disputed.

5.      Not disputed.

6.      Not disputed.

7.      Not disputed as to sentence one.  As to sentence two, the cited references do not

fully support this allegation.  Rather, the citation reflects the "concern" of J.A.'s

educational advocate that J.A.'s "behavior may be worsening, and that he may be regressing

academically."  AR. at 93.

8.      Not disputed.

9.      Not disputed.

10.     Not disputed

11.     Not disputed.

12.     Not disputed that Ms. Owens requested the meeting be rescheduled with J.A.'s

teacher and related service provided present.

13.     Disputed as to sentence one.  Prior to the June 12, 2007 meeting, DCPS speech

therapist had prepared a report identifying, *inter alia*, J.A.'s "emerging skills."  AR. at

78.  Not disputed as to sentence two.

14.     Not disputed.

15.     Not disputed as to sentence one.  Disputed as to sentence two and three.

16.     Not disputed.

17.     Not disputed.

18.     Defendants do not dispute that DCPS team members issued a change in placement

for J.A. from West to Ann Beers Elementary School; Defendants dispute the allegation

that this was done without progress reports or input from J.A.'s parents.  No dispute as to

sentence two.

19.    Disputed.  The meeting notes reflect that Ann Beers Elementary School program was discussed at the August 15, 2007 meeting, as does the testimony of Ms. Johnson. AR. 215-216. T. at 160.  In addition, this paragraph is not supported by any citation to the record.

20.    Not disputed.

21.    This paragraph is not supported by any citation to the record.  Absent any evidentiary support, the allegations in this paragraph cannot be evaluated or properly considered as part of a statement of facts. See LCvR 7(h).

22.    Not disputed.

23.    Not disputed.

24.    Not disputed.

25.    Not disputed.

26.    Not disputed.

27.    Not disputed.

28.    Defendants do not dispute that J.A.'s parents testified regarding the IEP process and the proposed placement at Ann Beers.  The remaining allegations in paragraph 28 are conclusions of law, which must be decided by the Court.

29.    Not disputed as to sentence one.  As to sentence two, Defendants add that Ms. Johnson became familiar with J.A. during his initial evaluation at the CARE Center.  T. at 153.  Not disputed as to sentence three.

30.    Not disputed.

31.    Defendants dispute the characterizations contained in this paragraph.

32.    Defendants do not dispute that the hearing officer's decision was approximately 2 and a half pages, Defendants dispute the characterizations contained in the paragraph.

33.    Defendants dispute the characterizations contained in this paragraph but do not dispute that the hearing officer's determination included four findings of fact and conclusions of law.

34.    Defendants dispute the characterizations contained in this paragraph.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Juliane T. DeMarco**
JULIANE T. DEMARCO
Assistant Attorney General
Bar Number 490872
441 Fourth Street, N.W., Sixth Floor
Washington, D.C. 20001
(202) 724-6614
(202) 741-0575 (fax)
August 20, 2008    E-mail: Juliane.DeMarco@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                                      |     |                              |
|------------------------------------------------------|-----|------------------------------|
| CARL ANDERSEN AND ALYSON STEELE,                     | )   |                              |
| parents and next friends of J.A., a minor,           | )   |                              |
|                                                      | )   |                              |
| Plaintiffs,                                          | )   |                              |
|                                                      | )   |                              |
| v.                                                   | )   | Civil Action No. 08-0580 (RJL) |
|                                                      | )   |                              |
| DISTRICT OF COLUMBIA, *et al.,*                      | )   |                              |
|                                                      | )   |                              |
| Defendants.                                          | )   |                              |
|                                                      | )   |                              |

_____

## ORDER

Upon consideration of the Defendants' Motion for Summary Judgment and the Plaintiffs' Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, and the record herein, it is, on this _____ of _____, 2008, hereby **ORDERED** that:

1.  the Defendants' Motion for Summary Judgment is **GRANTED**; and it is further **ORDERED** that

2.  the Plaintiffs Motion for Summary Judgment is **DENIED;** and it is further **ORDERED** that

3.  this case is **DISMISSED WITH PREJUDICE.**

_____
United States District Judge Richard J. Leon