## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CARL ANDERSON and ALYSON STEELE, parents and next friends of J.A., a minor** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Case No. 08-580 (RJL)** |
| **DISTRICT OF COLUMBIA,** *et al.* | ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION
(March 30, 2009) [# 11, 14]

Plaintiffs Carl Anderson and Alyson Steele filed this lawsuit on behalf of their four-year-old developmentally disabled son, J.A. They seek reimbursement for the cost of educating J.A. at a private school, the Jenny Waelder Hall Center for Children ("Jenny Waelder Hall"), alleging that the District of Columbia Public Schools ("DCPS") failed to provide J.A. with the free appropriate public education due to him under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Plaintiffs and defendants filed cross-motions for summary judgment. Because DCPS provided J.A. with the opportunity to receive a free appropriate public education, the Court GRANTS defendants' motion for summary judgment and DENIES plaintiffs' request for reimbursement of private tuition.

## BACKGROUND

In the Fall of 2006, J.A. was referred for special education testing. Administrative Record ("A.R.") at 33. As a result, the DCPS Central Assessment Referral and Evaluations ("CARE") Center conducted a series of evaluations. A.R. at 32-50. Ultimately, a multidisciplinary team ("MDT") classified J.A. as developmentally disabled and developed an Individualized Education Program ("IEP") to meet his needs. A.R. at 244. J.A.'s initial IEP required 24.5 hours of specialized instruction and weekly sessions of 1.5 hours each with an occupational therapist and a speech language pathologist. A.R. at 244. The IEP specified that J.A.'s progress was to be tracked on a monthly basis and identified ten separate goals. A.R. at 246-55. J.A.'s MDT, including his parents, signed off on the document on December 12, 2006. A.R. at 244. The IEP has not been revised since that time.

The team decided to place J.A. at West Elementary School, A.R. at 256, to receive the services outlined in the IEP. However, he failed to make progress. The team held subsequent meetings – including meetings in June and August of 2007 – in which they reviewed the IEP. The June meeting was unsuccessful because J.A.'s teacher had failed to measure his progress on a monthly basis, as required by the IEP. A.R. at 113. An educational advisor, who had conducted her own evaluations of J.A., accompanied the parents to the June meeting and requested that it be rescheduled for a time when J.A.'s teachers and related service providers could be present. A.R. at 113. J.A.'s special education teacher provided

2

a goals update summary, in which she indicated whether the IEP goals had been
mastered. A.R. at 114. She also prepared an IEP report card and a progress
report. A.R. at 115-17.

The MDT considered those reports at its August meeting and determined
that J.A., indeed, had not made progress. A.R. at 215-16. The team, which did
not include J.A.'s teachers, discussed changing J.A.'s placement from West
Elementary School to Anne Beers Elementary School, a newly-created, self-
contained preschool program. Pl. Statement of Material Facts ("Pl. Facts") ¶¶ 16,
18; A.R. at 215. J.A.'s father stated that he disagreed with the proposed placement
and planned to enroll J.A. at a private school. A.R. at 215. On August 15, 2007,
DCPS formally notified J.A.'s parents that J.A. would be moved to Anne Beers.
A.R. at 217.

The parents objected to this decision and, on November 1, 2007, they filed
an administrative due process request seeking a half-day placement at Jenny
Waelder Hall, where they had enrolled J.A. for the 2007-2008 school year. A.R.
at 23; Pl. Facts ¶ 21. The due process hearing took place on December 20, 2007,
and the Hearing Officer denied the parents' request shortly thereafter. A.R. at 3-6.
The officer found that the parents had not met their burden of proof to establish
that either the IEP or the proposed placement at Anne Beers was inappropriate.
A.R. at 5.

Plaintiffs filed suit in this Court on April 2, 2008, seeking reversal of the
Hearing Officer's decision. Now pending are cross-motions for summary

3

judgment. For the following reasons, defendants' motion is GRANTED, and plaintiffs' motion is DENIED.

## DISCUSSION

### I.  Standard of Review

Summary judgment shall be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In deciding whether there is a genuine issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The IDEA guarantees children with disabilities the availability of a free appropriate public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). In designing an appropriate education for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate to develop an IEP to meet the child's unique needs. 20 U.S.C. § 1414(d)(1)(B). When the parent objects "to the identification, evaluation, or educational placement of the child, or

4

the provision of a free appropriate public education to such child," he may seek an

impartial due process hearing. 20 U.S.C. §§ 1415(b)(6), 1415(f)(1). If the parent

is dissatisfied with the outcome of that hearing, he may appeal the decision to a

state court of competent jurisdiction or a federal district court. 20 U.S.C. §

1415(i)(2)(A).

In deciding the appeal, this Court must grant relief as appropriate, based on

a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). While the Court

makes an independent determination, it "must also give 'due weight' to the

administrative proceeding and afford some deference to the expertise of the

hearing officer and school officials responsible for the child's education."[1]

*Simmons v. Dist. of Columbia*, 355 F. Supp. 2d 12, 16 (D.D.C. 2004) (quoting

*Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993)). The burden of proof rests

with the party challenging the administrative determination, who must "at least

take on the burden of persuading the court that the hearing officer was wrong."

*Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005)

(quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

## II. Analysis

Parents who unilaterally decide to place their disabled child in a private

school without the consent of local authorities, as J.A.'s parents did, "do so at their

---

[1] Plaintiffs argue that this Court should give the Hearing Officer's decision *no* deference because his findings of fact and conclusions of law were not "regularly made," due to a lack of detail and a failure to credit plaintiffs' witnesses. Pl. Mot. at 11-20. However, as long as the decision is "sufficiently detailed to permit the district court to understand the basis for the hearing officer's resolution of the parents' claims," the Court should afford it due deference. *J.P. ex rel. Peterson v. County Sch. Bd.*, 516 F.3d 254, 261 (4th Cir. 2008). The Hearing Officer's decision meets that low bar, and even if this Court granted his assessment no deference, the administrative record fully supports his conclusions.

own risk." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

Parents may receive tuition reimbursement if the Court finds that (1) the public

placement violated the IDEA, and (2) the private school placement was proper

under the Act. *Id.* If the public school placement was appropriate, a disabled

child's parents are not entitled to reimbursement, and there is no need to analyze

the second factor. *See Schoenbach v. Dist. of Columbia*, 309 F. Supp. 2d 71, 77

(D.D.C. 2004). The appropriateness of the public school placement turns on two

further sub-issues: (1) whether DCPS complied with IDEA's procedural

requirements, and (2) whether the IEP was reasonably calculated to provide some

educational benefit to J.A. *See id.* at 78 (citing *Bd. of Educ. v. Rowley*, 458 U.S.

176, 206-07 (1982)). The answer to both these questions is a resounding yes.

How so?

### A. Compliance with IDEA Procedural Requirements

Plaintiff's initial challenge is to several alleged deficiencies in the

procedure followed by DCPS: (1) the failure to have a complete MDT present at

IEP meetings, (2) the failure to provide progress reports, (3) the failure to revise

the IEP, and (4) the proposal of an inappropriate program for J.A.[2]  Pl. Mot. at 21-

29. These alleged procedural violations are actionable only if they affect the

student's substantive rights. *Lesesne ex rel. B.F. v. Dist. of Columbia*, 447 F.3d

828, 834 (D.C. Cir. 2006). Because none of the defects identified by plaintiffs

---

[2] The third and fourth "deficiencies" are more properly characterized as questions of whether the IEP was reasonably calculated to provide an educational benefit to the student. The Court will address these allegations in Part II.B.

affected J.A.'s substantive rights, however, they must be "disregarded as harmless." *Razzaghi v. Dist. of Columbia*, 2005 U.S. Dist. LEXIS 36771, at *27 (D.D.C. Sept. 28, 2005); *see also Roark ex rel. Roark v. Dist. of Columbia*, 460 F. Supp. 2d 32, 42 (D.D.C. 2006).

First, plaintiffs allege that the MDTs convened in June and August of 2007 failed to meet the requirements of 20 U.S.C. § 1414(d)(1)(B), which mandates that the IEP team include a regular educator and a special educator of the child. While it is true that J.A.'s regular education and special education teachers did not participate in the June or August IEP sessions, the August meeting did include a placement specialist for early childhood education at the CARE Center, who had observed J.A. in the classroom; a DCPS speech pathologist; and a special education teacher at the CARE Center. A.R. at 215-17; Hearing Tr. at 153. The team also had written reports from J.A.'s special education teacher, indicating that J.A. was not making progress. A.R. at 114-17.

Plaintiffs argue that the omission of J.A.'s teachers from the IEP meeting "directly resulted in an IEP that is admittedly incomplete and, therefore, inappropriate." Pl. Mot. at 23-24. While the inclusion of J.A.'s teachers certainly would have been ideal, as the IDEA recognizes, the August 2007 team did have adequate substitutes, in the form of written progress reports from J.A.'s special education teacher and the presence of at least one education specialist who had observed J.A. in the classroom. Indeed, given the information presented to the MDT, the Court does not see how the teachers' absence directly resulted in an IEP

that was "inappropriate," and therefore a loss of educational opportunity. J.A.'s special education teacher provided relevant information to the team in a written form; the team used that information, in conjunction with their educational expertise and knowledge of J.A., to conclude J.A. was not making progress and changed his placement as a result. Plaintiffs therefore have not demonstrated that this procedural defect caused J.A. any substantive harm. *See Roark*, 460 F. Supp. 2d at 42 (DCPS' failure to send a representative to an MDT meeting, a procedural violation, did not cause substantive harm).

Next is plaintiffs' allegation of a failure to provide monthly progress reports before the June 2007 meeting. Although a more serious procedural deficiency, it, too, should be disregarded as harmless. It is axiomatic that the MDT can not properly review a student's IEP without first receiving the relevant information. While J.A.'s progress reports were not completed in a timely fashion, the MDT did have the necessary information *before* it made any decisions affecting J.A.'s IEP or placement. Thus, while DCPS indisputably failed to meet the requirements of the IEP by neglecting its obligation to provide monthly progress evaluations, it did correct the defect and implemented a change of placement intended to provide J.A. with an appropriate education. Plaintiffs, who chose to place J.A. in a private school before the change of placement occurred, have pointed to no harm to J.A.'s substantive rights that resulted from this procedural deficiency, and, accordingly, it is of no legal significance. *See Razzaghi*, 2005 U.S. Dist. LEXIS 36771, at \*27-28 (when DCPS failed to meet a

procedural requirement but corrected the deficiency and provided student with an appropriate education, plaintiffs were not entitled to reimbursement for private tuition).

### B. Suitability of IEP

An IEP must be "reasonably calculated" to confer educational benefits on the child, *Rowley*, 458 U.S. at 207, but it need not "maximize the potential of each handicapped child commensurate with the opportunity presented non-handicapped children." *Id.* at 200. Plaintiffs allege both that J.A.'s IEP and his placement at Anne Beers were inappropriate, *i.e.*, they were not reasonably calculated to confer educational benefits. The Hearing Officer rejected both of these arguments, and this Court, giving his decision due weight, does the same.

Plaintiffs do not object to the original IEP per se. Instead, they insist that, in the face of J.A.'s lack of progress, his IEP should have been revised. Pl. Mot. at 27-28. While academic progress is an important factor in determining educational benefit, *Lyons*, 829 F. Supp. at 418, there is little evidence in the record that the IEP as originally constructed was not reasonably calculated to confer such a benefit. Rather, the information provided to the MDT led the team to conclude that J.A.'s placement at West, not the IEP itself, was the source of his lack of progress. As a result, the team placed J.A. at a school that would more adequately fulfill his need for a small class size and structured environment while still providing the services required by his IEP. Plaintiffs provide no evidence that the original IEP – rather than the placement at West Elementary – was the source of

9

J.A.'s lack of progress.  The Court therefore has no basis to conclude that the IEP should have been revised, and it will not overturn the Hearing Officer's decision on those grounds.

Plaintiffs further argue that the placement at Anne Beers was inappropriate because J.A.'s IEP was based on incomplete information and, "where an IEP is based on incomplete information, it is necessarily inappropriate, as is any placement based on it." Pl. Mot. at 29.  Because the Court determined that J.A.'s IEP was based on adequate information, *see* Part II.A, *supra*, this argument necessarily fails.

Moreover, the evidence in the record supports the Hearing Officer's conclusion that Anne Beers was an appropriate placement for J.A.  DCPS' witnesses – educational specialists with experience at Anne Beers – testified that the school was a structured environment with a low noise level and smaller class size, which administered the services required by J.A.'s IEP.  Hearing Tr. at 123-25, 129-31, 170-73.  These attributes align almost exactly with those recommended by J.A.'s educational advocate, who suggested a classroom with high structure and low noise level.  Def. Mot. at 12; A.R. at 158.  Plaintiffs argue, based on a single visit to Anne Beers, that it was not the right place for J.A.  A.R. at 156-59.  But given the limited basis for this assessment, and the indisputable requirement that courts must "afford some deference to the expertise of the . . . school officials responsible for the child's education," *Lyons*, 829 F. Supp. at 418,

this Court will not overturn the Hearing Officer's determination that Anne Beers was an appropriate placement for J.A.

Therefore, because the public school placement proposed by DCPS was appropriate, plaintiffs' request for reimbursement of private school costs must fail.

## CONCLUSION

The IDEA "guarantees a free appropriate education, [but] it does not . . . provide that this education will be designed according to the parent's desires." *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 139 (D.D.C. 2002) (citing *Rowley*, 458 U.S. at 207). "Thus, proof that loving parents can craft a better program than the state offers does not, alone, entitle them to prevail under the Act." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Jenny Waelder Hall may well be a better environment for J.A., but DCPS has made available a free appropriate public education to this child, and, in such circumstances, DCPS cannot be required to pay for the education his parents would prefer.

Therefore, for the foregoing reasons, the Court GRANTS defendants' motion for summary judgment, and DENIES plaintiffs' motion for summary judgment.

RICHARD J. LEON
United States District Judge